**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Robert PAULK and Darrell Thomas, Defendants–Appellants.**

No. 89–1921.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1990.

Rehearing Denied Jan. 9, 1991.

Gerald A. Banks, Dallas, Tex., for Paulk.

John D. Nation, Dallas, Tex., for Thomas.

Mark L. Nichols, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and KING, Circuit Judges.

CLARK, Chief Judge:

## I.

James Paulk and Darrell Thomas appeal their sentences imposed under the United States Sentencing Guidelines (U.S.S.G.). Paulk and Thomas claim the district court erroneously enhanced their sentences for possession of firearms under U.S.S.G. § 2D1.1(b)(1). Thomas also claims the district court improperly computed his criminal history score under the Guidelines. We affirm Thomas' conviction and sentence, vacate Paulk's sentence and remand for further proceedings.

## II.

Paulk and Thomas were indicted along with several co-defendants in a seven count indictment charging a conspiracy to knowingly possess with intent to distribute amphetamine in violation of 21 U.S.C. § 846, distribution, and possession with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1).

### A. Paulk

Pursuant to a plea agreement, Paulk plead guilty only to Count 5 charging distribution of amphetamine. Paulk's Guidelines sentence of incarceration was calculated to range from sixty-three to seventy eight months. He received a two level increase in his base offense level under U.S.S.G. § 2D1.1(b)(1) predicated on a finding that he was in possession of a firearm during the commission of the drug offense. Paulk objected to the increase.

The firearm, a .22 caliber pistol, was in the glove compartment of the car Paulk drove to the scene of the drug transaction where he was arrested. At the time of his arrest, Paulk was some distance from the car observing the sale of amphetamine by a co-conspirator to an undercover federal drug enforcement agent. The gun was apparently inoperative and unloaded. Paulk claimed that he put the gun in the glove compartment about a week before his arrest, intending to take it to a gunsmith for repair. Further, Paulk claimed he had forgotten the gun was in the console of his car until it was recovered by the federal agents. The district court overruled Paulk's objection and sentenced him to seventy-eight months incarceration.

### B. Thomas

Thomas, also made a plea agreement. He plead guilty only to Count 7 of the Indictment, possession with intent to distribute amphetamine in violation of 21 U.S.C. § 841(a)(1). Thomas' sentence range was calculated under the Guidelines to be from one hundred and thirty months to one hundred and sixty-two months incarceration. As with Paulk, Thomas' base sentence level was increased by two points under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. Likewise, Thomas objected to the increase.

Thomas was arrested by federal drug enforcement agents on January 29, 1989 in the possession of one quarter pound of amphetamine and handwritten notes indicating drug transactions. At the time of his arrest, Thomas was alone and no gun was found. However, Thomas had been arrested by Texas officials on January 21, 1989, in possession of amphetamines and two handguns. Because Thomas had clearly possessed a firearm during the life of the alleged conspiracy and because co-conspirators possessed guns when arrested, the district court overruled Thomas' objection to the two point increase in his base sentence level.

Thomas also objected to the criminal history score contained in his presentence report. The pre-sentence report noted that Thomas had seven convictions in the State of Texas, both felony and misdemeanor, for which criminal history points had been assigned. The report carried a criminal history score of twelve, counting each of the seven convictions separately. Thomas objected to the separate treatment of several of his convictions. The district court sustained his objection to the separate treatment of two 1982 convictions for possession of marijuana and driving while intoxicated which were consolidated for sentencing. However the court overruled Thomas' objection to the separate treatment of a 1984 conviction for possession of a controlled substance and a 1985 conviction for possession of a controlled substance even though the sentences for these convictions were imposed on the same day and ran concurrently. The district court found that Thomas' base criminal history score was ten and added two points pursuant to U.S.S.G. § 4A1.1(d), resulting in a final score of twelve. Thomas was then sentenced to one hundred and sixty-two months incarceration.

Both Paulk and Thomas appeal their sentences.

### III.

Paulk and Thomas raise three issues for review. Both Paulk and Thomas claim that the circumstances of his arrest do not justify the increase in his base sentence level for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Thomas asserts that the district court erred in calculating his criminal history score by treating cases which were consolidated for sentencing as separate convictions.

When reviewing sentences imposed under the Guidelines, the "district court's application of the guidelines to the facts" shall be upheld unless they are "clearly erroneous" and will be given "due deference" by this court. 18 U.S.C. § 3742(d). The district court's legal interpretation of the Guidelines are reviewed *de novo*. *United States v. Suarez*, 911 F.2d 1016, 1018 (5th Cir.1990).

### 1. Paulk's Firearm Claim

■ U.S.S.G. § 2D1.1(b)(1) is a "specific offense characteristic" which allows the district court to increase the base sentence level of a person convicted of drug related offenses by two points "[i]f a firearm or other dangerous weapon was possessed during the commission of the offense." Paulk claims that the district court improperly increased his base sentence level under section 2D1.1(b)(1) because the facts of his arrest do not warrant the increase. The facts are not in dispute. Paulk was arrested some distance from his car as he was watching the sale of amphetamines take place at the car. The pistol could not be fired, was unloaded and was inside the fastened glove compartment of the car. Thus, Paulk argues he did not "possess a firearm or other dangerous weapon" "during the commission of the offense" within the meaning of section 2D1.1(b)(1). Paulk is mistaken.

Application Note 3 to section 2D1.1(b)(1) provides: "the adjustment should be applied if the weapon was present, unless it was clearly improbable that the handgun was connected to the drug transaction." The decision to apply section 2D1.1(b)(1) is essentially a factual determination to be made by the district court and is reviewed under the clearly erroneous standard. The fact that Paulk was arrested some distance from his car is not dispositive. This court has approved the application of section 2D1.1(b)(1) under similar circumstances. In *United States v. Otero*, we held the district court correctly applied section 2D1.-1(b)(1) even though the handgun was found in a defendant's van parked outside the motel room where the cocaine sale and arrest took place. 868 F.2d 1412, 1415 (5th Cir.1989). Paulk was in relative proximity to his car and could have retrieved the gun from the glove compartment without any significant delay.

■ The inoperable character of the gun is also not dispositive. *United States v. Luster*, 896 F.2d 1122, 1129 (8th Cir.1990). Section 2D1.1(b)(1) was designed to provide added punishment for those drug offenders who heighten the danger inherent in drug trafficking by possession of dangerous weapons. U.S.S.G. § 2D1.1 (Application Note 3). The mere presence of a handgun can escalate the danger inherent in such situations. Since it is difficult, if not impossible to tell from sight whether a gun is loaded or operational, an unloaded or broken gun may be of use in a criminal act. Flashing an unloaded gun often has the same effect as waving a loaded one. It " '[i]nstills fear in the average citizen' and 'as a consequence ... creates an immediate danger that a violent response will ensue.' " *United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir.1989) (*quoting McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986)). Although the gun may not be able to inflict harm, its appearance may evoke it. The district court was not clearly erroneous in finding it not improbable that the handgun was connected with the sale of amphetamine.

■ Paulk maintained at his pretrial hearing and now contends on appeal that he did not remember the gun was in the glove compartment of his car. He claims that the gun had been there approximately one week and that he forgot about the gun until it was recovered from his car. Paulk was sentenced in September of 1989 under a version of U.S.S.G. § 1B1.3 which this court has recently held imported a scienter requirement into § 2D1.1(b)(1). *Suarez*, 1019–22 (adopting the holding of *United States v. Burke*, 888 F.2d 862 (D.C.Cir. 1989)). While § 2D1.1(b)(1) does not address the defendant's culpability, the version of § 1B1.3—which sets out "general application principals"—in effect when Paulk was sentenced required possession

of the weapon to be "intentional[ ], reckless[ ], or by criminal negligence" *Id.* (*quoting* U.S.S.G. § 1B1.3(a)(3)).[1] The record does not indicate whether the district court considered Paulk's intent, recklessness or criminal negligence in possessing the pistol in overruling Paulk's objection to section 2D1.1(b)(1). We vacate the district court's sentencing determination for further proceedings. We express no opinion about the factual determination of Paulk's culpability in possessing the gun.

### 2. Thomas' Firearms Claim

■ Thomas too claims that the district court improperly increased his base sentence level under section 2D1.1(b)(1). He contends that section 2D1.1(b)(1) does not allow the district court to increase the base sentence level when the defendant did not possess a firearm during the particular offense for which he was convicted. Thomas is essentially arguing that section 2D1.1(b)(1) allows enhancement of the base sentence level only if a firearm was possessed during the offense of conviction. The government contends that section 2D1.1(b)(1) allows the court to consider conduct relating to charged offenses other than the offense of conviction and even related uncharged conduct as a basis for enhancing the sentence level. Alternatively the government urges us to evaluate the district court's enhancement of Thomas' sentence as an upward departure from the Guidelines.

The language of section 2D1.1(b)(1) indicates that the court must look at conduct relating to the offense of conviction to determine whether a sentence enhancement is appropriate. "If a firearm or other dangerous weapon is possessed during the commission of *the* offense, increase by two levels." U.S.S.G. § 2D1.1(b)(1) (emphasis added). However, section 1B1.3, the section on relevant conduct, sets the parameters for what conduct is relevant to determining both the base sentence level and whether specific offense characteristics

such as section 2D1.1(b)(2) are to be applied. Section 1B1.3 states in pertinent part:

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) *specific offense characteristics* and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

\*   \*   \*   \*   \*   \*

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, *all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;* \* \* \* (emphasis added)

Under section 2D1.1(b)(1), the base sentence level of the offense for which Thomas was convicted—possession of amphetamine—is determined largely by the quantity of the controlled substance involved. As such, section 3D1.2(d) is applicable and would require grouping of multiple counts for sentencing purposes. Relevant conduct for offenses to which section 3D1.2(d) applies is governed by section 1B1.3(a)(2) which allows the court to consider "all such acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." It is clear that section 1B1.3(a)(2) allows the court to consider conduct that is related to but not strictly a part of the offense of conviction when determining the base sentence level and whether specific offense characteristics are applicable. This court has recently held that section 1B1.3(a)(2) allows the trial court to compute a defendant's base sentence level by aggregating the amount of drugs involved in the offense of conviction with amounts of drugs involved in related but uncharged conduct. *United States v. Woolford,* 896 F.2d 99, 102–03 (5th Cir.1990). This Circuit is not

---

**1.** Sections 1B1.3(a)(3) and (a)(4) were amended to delete the language requiring scienter, effective November 1, 1989. In *Suarez* this court held that it would be a violation of the *ex post* *facto* clause of the Constitution to apply the amended section 1B1.3 and not require a showing of scienter for crimes committed prior to November 1, 1989. *Suarez,* at 1021–22.

alone in so holding. *See United States v. Blanco*, 888 F.2d 907 (1st Cir.1989); *United States v. Bedoya*, 878 F.2d 73 (2nd Cir. 1989); *United States v. Williams*, 880 F.2d 804 (4th Cir.1989); *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989); *United States v. White*, 888 F.2d 490 (7th Cir.1989); *United States v. Allen*, 886 F.2d 143 (8th Cir. 1989); *United States v. Rutter*, 897 F.2d 1558 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Wilson*, 884 F.2d 1355 (11th Cir.1989).

Guidelines section 1B1.3 applies equally to determination of the base sentence level and the application of specific offense characteristics such as section 2D1.1(b)(1). No reason distinguishes consideration of relevant uncharged conduct when computing a defendant's base sentence level under section 1B1.3(a)(2) from consideration of relevant uncharged conduct when determining a specific offense characteristic under section 1B1.3(a)(2).

The Background Notes found in the Commentary to section 1B1.3(a)(2) support the view that the court can consider other related conduct in applying a specific offense characteristic. They state in pertinent part:

> Subsections (a)(1) and (a)(2) adopt different rules because offenses of the character dealt with in subsection (a)(2) * * * often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing. * * * *Relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses.* (emphasis added)

The district court could properly consider related relevant conduct in determining the applicability of section 2D1.1(b)(1).

■ There is no question that Thomas possessed firearms during the life of the conspiracy charged in Count 1 of the Indictment. Count 1 charged that the conspiracy existed from September 1988 to January

26, 1989. Texas authorities arrested Thomas in possession of amphetamines and firearms on January 21, 1989 only six days prior to his arrest by federal agents. Other co-conspirators charged in the indictment were also arrested in possession of firearms during amphetamine transactions. The district court reasonably considered these facts part of the "same course of conduct or scheme as the offense of conviction" in enhancing Thomas' base sentence level for possession of a firearm pursuant to section 2D1.1(b)(1). The district court's factual determinations based on such consideration was not clearly erroneous.

Because we have decided that section 2D1.1(b)(1) allows the district court to consider related relevant conduct, we do not address the government's alternative argument that the district court's decision be analyzed as an upward departure from the Guidelines.

### 3. Thomas' Criminal History Claim

■ Thomas claims the district court erred in computing his criminal history score because it treated two convictions in which sentences were imposed on the same day and were served concurrently as separate and unrelated offenses. Thomas' argument is unconvincing. The convictions in question were the result of two separate criminal acts; possession of a controlled substance in 1984 and possession of a controlled substance in 1985. Thomas does not allege that the two convictions are factually related. Simply because sentences run concurrently and were imposed on the same day does not require the sentences to be consolidated for guideline purposes absent a showing of a close factual relationship between the convictions. *United States v. Flores*, 875 F.2d 1110 (5th Cir. 1989). The district court's computation of Thomas' criminal history score was not error.

### IV.

Paulk's sentence is vacated and the cause is remanded to the district court to determine Paulk's culpability in possessing

the firearm. Thomas' conviction and sentence is affirmed.

VACATED and REMANDED in part, and, in part, AFFIRMED.