**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tyron Mouton MITCHELL, Byron Lamonte McCutcheon, Raymond Lee Harbert, Jr., Corey Lamont Harbert and Derrick Dwayne Briscoe, Defendants–Appellants.**

No. 93–8358.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1994.

Stanley Rentz, Waco, TX (Court-appointed), for D.D. Briscoe.

Scott Peterson, Waco, TX (Court-appointed), for R.L. Harbert.

J. Marlin Blackledge, Waco, TX (Court-appointed), for Corey L. Harbert.

Brian Pollard, Waco, TX (Court-appointed), for B.L. McCutcheon.

Richard Ferguson, Waco, TX (Court-appointed), for Mitchell.

Richard L. Durbin, Jr., Asst. U.S. Atty., James H. DeAtley, Acting U.S. Atty., San Antonio, TX, Mervyn Hamburg, U.S. Dept. of Justice, Washington, DC, for appellee.

Before POLITZ, Chief Judge, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge.

Tyron Mitchell, Byron McCutcheon, Raymond Harbert, Corey Harbert, and Derrick Briscoe (collectively "Appellants") were convicted of a conspiracy to possess crack cocaine with intent to distribute. Appellants challenge their convictions and sentences. We affirm.

## BACKGROUND

In 1990, an undercover drug investigation identified Delvin Livingston, among others, as supplying cocaine and overseeing the distribution of crack cocaine in Waco and Houston, Texas and Mississippi. Marvin Webster

and Tyron Mitchell were identified as mid-level distributors for Livingston in Waco and Houston. They supplied dealers in Waco such as Byron McCutcheon, and a group of individuals who called themselves the Pecan Garden Posse. The group included Raymond Harbert, his brother, Corey Harbert, and their cousin, Derrick Briscoe.

In 1992, Mitchell, McCutcheon, Briscoe, and the Harbert brothers (along with Livingston and Webster) were indicted for conspiracy to possess crack cocaine with intent to distribute under 21 U.S.C. § 846. Additionally, Mitchell and McCutcheon were indicted for carrying weapons during and in relation to drug trafficking activity under 18 U.S.C. § 924(c), and McCutcheon was charged with possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1). Appellants were convicted of all counts, except that McCutcheon was acquitted of the weapons offense. Mitchell was sentenced to life imprisonment on the conspiracy conviction and a consecutive five-year term on the weapon offense. McCutcheon and Briscoe were each sentenced to 360 months imprisonment, and the Harbert brothers were each sentenced to 240 months. This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence Supporting the Conspiracy Convictions of Briscoe and the Harbert Brothers

Briscoe, Raymond Harbert, and Corey Harbert contend that the evidence was insufficient to support their convictions for conspiracy. Upon such a challenge, we review all evidence, together with all credibility choices and reasonable inferences, in the light most favorable to the verdict. *United States v. Maseratti,* 1 F.3d 330, 337 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1096, 127 L.Ed.2d 409, *and cert. denied,* —— U.S. ——, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994). Our inquiry is whether a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *Id.*

■ To establish guilt of a drug conspiracy under 21 U.S.C. § 846, the government must prove that (1) there was an agreement

between two or more persons to import or possess controlled substances with intent to distribute; (2) each defendant knew of the conspiracy and intended to join it; and (3) each defendant voluntarily participated in the conspiracy. *United States v. Skillern,* 947 F.2d 1268, 1273 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1509, 117 L.Ed.2d 646 (1992). Proof of any element may be by circumstantial evidence, and " '[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, ... be sufficient to constitute conclusive proof.' " *United States v. Roberts,* 913 F.2d 211, 218 (5th Cir.1990) (quoting *United States v. Lechuga,* 888 F.2d 1472, 1476 (5th Cir.1989)), *cert. denied,* 500 U.S. 955, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991). With the above in mind, we review the evidence against Briscoe and the Harbert brothers.

### A. Raymond Harbert

■ The evidence indicated that Raymond Harbert was a member of the Pecan Garden Posse, a group of individuals who sold crack cocaine supplied by Mitchell and Webster. A government witness identified Raymond as his frequent source of crack, testified that Raymond had admitted to him that Webster was his source, and described an occasion when Raymond had manufactured crack at Webster's apartment. Telephone records showed numerous calls between telephones associated with the Harbert brothers and Livingston and Webster. Moreover, a search of Raymond and Corey Harbert's parents' residence uncovered documents listing the telephone numbers of Livingston and Webster. This evidence was sufficient to support the conspiracy conviction.

### B. Briscoe

■ The government also presented sufficient evidence to support Briscoe's conviction. In addition to testimony that Briscoe was a member of the Pecan Garden Posse, a witness testified that, on one occasion during the conspiracy period, Briscoe supplied him with crack cocaine. Furthermore, telephone records indicating that multiple calls were made between Briscoe and Webster and

items seized from Briscoe's residence (including a pager, crack pipe, and documents containing the telephone numbers of Webster and McCutcheon) also provided support.

### C. Corey Harbert

■ Corey Harbert, like his brother and cousin, was a member of the group supplied by Mitchell and Webster. A government witness specifically characterized Corey as one of Webster's drug "runners." Additionally, in describing an occasion when Raymond Harbert had manufactured crack at Webster's apartment, the witness noted that Corey was present. Furthermore, a paper sack discovered during a search of Webster's residence (on which were written the name "Corey" and letters and numbers interpreted by a government witness as referring to drug transactions), as well as telephone records and documents found at the Harbert residence, supported Corey's conspiracy conviction. This collection of evidence and circumstances was sufficient to allow a reasonable jury to find that Corey Harbert was a member of the conspiracy charged in the indictment.

### II. Motion to Suppress Evidence found in McCutcheon's Home

■ McCutcheon contends that the district court should have suppressed the evidence obtained from the search of his residence because the affidavit in support of the search warrant did not establish probable cause. In reviewing a district court's denial of a motion to suppress, we employ a two-part test: (1) whether the good faith exception to the exclusionary rule applies and (2) whether the warrant was supported by probable cause. *United States v. Laury,* 985 F.2d 1293, 1311 (5th Cir.1993). Generally, if the good faith exception applies, we need not reach the probable cause issue. *Id.*

■ Under the good faith exception, we uphold a search if the officers reasonably relied on a search warrant. *United States v. Fisher,* 22 F.3d 574, 578 (5th Cir.1994). "Warrants based on affidavits 'so lacking in evidence of probable cause as to render official belief in its existence entirely unreasonable' do not fall within this exception." *Id.*

(quoting *United States v. Satterwhite,* 980 F.2d 317, 320 (5th Cir.1992)). But "[w]here a warrant is supported by more than a bare bones affidavit, an officer may rely in good faith on the warrant's validity." *Laury,* 985 F.2d at 1311 (footnote omitted). The affidavit in this case clearly satisfies the good faith exception.

The affiant reported that three confidential informants had implicated McCutcheon in drug dealing. One told an officer that he saw McCutcheon and Webster together in Webster's car with 1.5 kilograms of cocaine in their possession. Another reported to the same officer that McCutcheon had sold a quarter ounce of cocaine to an individual in a convenience store. And a third informant described to the affiant an incident in which Webster and McCutcheon had brought 30 rocks of cocaine to the Harberts. This informant also identified McCutcheon as one of Webster's runners and told the affiant that Luis Sais, a drug dealer, claimed to have bought crack and cocaine powder from McCutcheon over a·four-month period.

■ McCutcheon attempts to discount these informant reports by arguing that they were hearsay. An affidavit may, however, employ hearsay as long as it provides a "substantial basis for crediting the hearsay." *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). The affidavit in this case provided such a basis. It averred that each informant was credible and reliable because the information they provided was corroborated through independent investigations, personal observation, and information provided by other informants. It also indicated that the informants had provided reliable information in the past. We conclude that the officers could rely in good faith on the affidavit.

### III. Racial Composition of Venire

■ McCutcheon claims the venire was not selected from a fair cross-section of the community. Specifically, he asserts that African–Americans and Hispanics were underrepresented. To establish such a claim "the

defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). McCutcheon presented no evidence supporting his assertion that African–Americans and Hispanics were underrepresented or suggesting that they had been systematically excluded. Therefore, the district court properly rejected his claim.

### IV. Conspiracy Instruction

■ McCutcheon contends that the court did not properly instruct the jury on the elements of conspiracy. As he did not make this objection during the trial, we will not disturb the decision unless we find plain error. *United States v. Davis,* 19 F.3d 166, 169 (5th Cir.1994). "Plain error occurs only when the instruction, considered as whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice." *Id.* With this standard in mind, we address McCutcheon's specific arguments.

■ He first argues that the charge did not require the government to prove that he knew of and voluntarily participated in the conspiracy. We disagree. The court told the jury that to convict the defendant of conspiracy, it must be convinced beyond a reasonable doubt that (1) there was a conspiracy and (2) the defendant willfully became a member of such conspiracy. The phrase "willfully became a member" adequately incorporates the elements of knowledge and participation.

Second, he challenges a Fifth Circuit pattern jury instruction, which informed the jury that to convict the defendant of conspiracy, it did not have to find that "all of the persons alleged [in the indictment] to have been members of the conspiracy were such." According to McCutcheon, this instruction was ambiguous as to whether the government must prove that he was a member of the conspiracy. Considering the whole charge, we find that the government's burden was sufficiently clear. The court told the jury several times during the charge that it must find that the defendant willfully became a member of the conspiracy. Plain error did not occur.

### V. Motion to Sever Briscoe's Trial

■ Briscoe complains that the trial court erred in denying his Rule 14 motion for severance. Our review of such a denial is limited to abuse of discretion. *United States v. Pofahl,* 990 F.2d 1456, 1483 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 266, 126 L.Ed.2d 218 *and cert. denied,* —— U.S. ——, 114 S.Ct. 560, 126 L.Ed.2d 460 (1993). Under this standard of review, "a defendant must show that he suffered specific and compelling prejudice against which the district court could not provide adequate protection, and that this prejudice resulted in an unfair trial." *United States v. Villarreal,* 963 F.2d 725, 731 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992).

■ In an effort to meet his heavy burden, Briscoe argues that his trial should have been severed because he was a minor participant in the conspiracy and most of the evidence presented at trial did not pertain to him. He further argues that he was prejudiced by the volume of evidence against his co-defendants. We are not persuaded. A quantitative disparity in the evidence does not by itself warrant severance nor does the mere presence of a spillover effect. *See Pofahl,* 990 F.2d at 1483. Furthermore, the court protected Briscoe against spillover by instructing the jury to separate the evidence and apply it only to the defendant against whom it was offered. The district court did not abuse its discretion.

### VI. Evidence of Convictions

■ Raymond Harbert contends that the district court erred in allowing government witnesses to testify on direct examination that they had pled guilty and been convicted of drug offenses, including offenses in which some of the defendants were involved as co-conspirators. We have repeatedly held that a witness-accomplice's guilty plea may be

admitted into evidence if it serves a legitimate purpose and a proper limiting instruction is given. *See, e.g., United States v. Holley,* 23 F.3d 902, 911 (5th Cir.1994). These conditions have been met.

The prosecutor legitimately elicited evidence of witness plea bargains and convictions to "blunt the sword of anticipated impeachment." *United States v. Valley,* 928 F.2d 130, 133 (5th Cir.1991) (citations omitted). Moreover, the court properly instructed the jury about the limited use of guilty pleas. It informed the jury that witness convictions could be considered only in determining witness credibility. It also cautioned that the fact that a co-conspirator has entered a plea of guilty to the offense charged is not evidence of the defendant's guilt. Therefore, we reject Raymond Harbert's contention.

### VII. Sentencing Determinations

#### A. Amount of Drugs Attributed to Briscoe, McCutcheon and Corey Harbert

■ McCutcheon, Briscoe, and Corey Harbert contest the district court's decision to hold them accountable for 5 to 15 kilograms of cocaine. Under the Sentencing Guidelines, a defendant who participates in a drug conspiracy is accountable for the quantity of drugs, which is attributable to the conspiracy and reasonably foreseeable to him. *See* U.S.S.G. § 1B1.3(a)(1)(B). The computation of the amount of drugs for which an individual shall be held accountable at sentencing represents a factual finding, which must be established by a preponderance of the evidence. *United States v. Mergerson,* 4 F.3d 337, 343–44 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994). The finding shall be upheld on appeal unless it is clearly erroneous. *United States v. Ponce,* 917 F.2d 841, 842 (5th Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 453 (1991).

The court's decision was based in part on the testimony of a government investigator who estimated that approximately one kilogram per month of crack cocaine was being distributed during the course of the conspiracy from August 1990 to August 1992. Appellants do not challenge that estimate. Rather, they argue that it was not foreseeable to them. To the contrary, a preponderance of the evidence indicated that Appellants actively participated in the conspiracy, none of them were late joiners, and they could reasonably foresee they were not the exclusive customers of their suppliers. Considering this evidence, we cannot say that the district court's decision was clearly erroneous.

#### B. Briscoe's Possession of a Weapon

■ Briscoe argues that the court erred in increasing his offense level for possession of a firearm during the course of a drug offense. Section 2D1.1 of the Sentencing Guidelines instructs the sentencing court to increase the defendant's offense level by two whenever, in a crime involving the manufacture, import, export, trafficking, or possession of drugs, a dangerous weapon was possessed. Application Note 3 to § 2D1.1 explains that the enhancement for possession of a weapon "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

Upon assessing the penalty, the court noted that Briscoe was twice found to be in possession of a firearm in connection with the conspiracy. During a search of a residence occupied by Briscoe but owned by his cousin Johnny Hines, officers found, among other things, a .45 caliber semi-automatic pistol in a table in Briscoe's bedroom. And on another occasion, when officers attempted to stop a car driven by Briscoe, Briscoe jumped out of the car, ran to the front door of Hines's house and handed Hines a small caliber revolver.

On appeal, Briscoe, focusing solely on the gun found during the search of Hines's house, argues that the court failed to make a factual determination whether he possessed the gun. This argument is without merit. The court clearly stated that the enhancement was appropriate because Briscoe possessed a gun twice during the commission of the conspiracy.

Next, he argues, as he did at the sentencing hearing, that the two-level penalty should not have been assessed because the gun was

inoperable and the government did not prove that he possessed the gun. In support of his argument he notes that (1) the gun had no clip and no ammunition was found, (2) it was not in plain view, (3) it was found in Hines's house, and (4) Hines testified that the gun was his and that Briscoe was merely a guest in his home. We review the district court's determination for clear error. *See Mergerson*, 4 F.3d at 350.

■ It is not dispositive that the gun was inoperable. *United States v. Paulk*, 917 F.2d 879, 882 (5th Cir.1990). Section 2D1.1(b)(1) is an added punishment for drug offenders who heighten the danger of drug trafficking by possessing a dangerous weapon. *Id.* The mere presence of gun, loaded or not, can escalate the danger. *Id.* The other facts and assertions are also not dispositive. In determining possession "[w]hat matters is not ownership but accessibility." *United States v. Menesses*, 962 F.2d 420, 429 (5th Cir.1992). The government proved that Briscoe resided in the house and in the bedroom where the gun was found. Given this evidence, the court's finding that Briscoe was in possession of the gun was not clearly erroneous.

Finally, Briscoe suggests that there was no evidence that the weapon was possessed in connection with the conspiracy. Because he raises this argument for the first time on appeal, our review is limited to plain error. *United States v. McCaskey*, 9 F.3d 368, 376 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). A thorough examination of the record reveals that the finding that Briscoe possessed a gun in connection with the conspiracy did not result in plain error.

■ The government may satisfy its burden of proving a connection by "providing evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." During his membership in the conspiracy, Briscoe was twice found to be in possession of a gun while at Hines's house. The probation officer relayed reports that Hines's house was used for drug trafficking. And finally, items found during searches of the house (including a pager, crack pipe, and

documents containing the telephone numbers of Webster and McCutcheon) also provide a nexus.

### C. Mitchell's Managerial Status

■ Section 3B1.1(b) directs the sentencing court to increase a defendant's offense level by three "if the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." Mitchell argues, for the first time on appeal, that the court erred in assessing the three-level increase. Accordingly, our review is limited to plain error. *Pofahl*, 990 F.2d at 1471.

In recommending the three-level enhancement, the probation officer stated that Mitchell made trips to Houston to pick up multiple kilograms of cocaine, which he transported to central Texas for distribution in Waco, Temple, and Austin, and that he recruited individuals for distributing drugs and claimed a larger share of the profits. In light of these statements, which were not challenged by Mitchell at sentencing, we conclude that the court did not plainly err in applying the three-level increase.

### D. Briscoe's and McCutcheon's Entitlement to Credit for Minimal or Minor Participation

■ Briscoe and McCutcheon contend they are entitled to a reduction in their offense levels because their roles in the conspiracy were minimal or minor as compared to the roles of others. We review under the clearly erroneous standard. *United States v. Buenrostra*, 868 F.2d 135, 138 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

Guideline section 3B1.2 provides a two- to four-level reduction in the base offense level for minimal and minor participants. The Guidelines define "minimal participant" as one who demonstrates a "lack of knowledge or understanding of the scope and structure of the enterprise." U.S.S.G. § 3B1.2, cmt. (n. 1). A "minor participant" is similarly defined as one who is "less culpable than most other participants, but whose role could not be described as minimal." *Id.* (n. 3).

Because most offenses are committed by participants of roughly equal culpability, our Court has noted that "it is intended that [the adjustment] will be used infrequently." *United States v. Nevarez–Arreola,* 885 F.2d 243, 245 (5th Cir.1989). We are unpersuaded by Briscoe's and McCutcheon's suggestion that either classification applies to them.

The evidence establishes that Briscoe was one of the primary members of the Pecan Garden Posse who, along with the Harbert brothers, received cocaine from Webster and then distributed it in Waco. The evidence further indicates that McCutcheon received significant amounts of cocaine from Webster and then distributed it to lower level street dealers. Based on this evidence, the court found Briscoe and McCutcheon to be average participants in the conspiracy and denied the reduction. We cannot say that the district court's determination was clearly erroneous.

E. McCutcheon's Misconduct While on Probation

Pursuant to Sentencing Guidelines § 4A1.1(d), the district court added two points to McCutcheon's criminal history computation for participating in the conspiracy while on probation from a local conviction. Claiming that the government failed to prove that he committed any conspiratorial acts during his probation period, McCutcheon contends that the court erred in assessing the penalty. Contrary to McCutcheon's claim, the record supports the enhancement.

McCutcheon's period of probation was May 1991 to November 1991. At trial, Vincent Walton testified that he bought cocaine from McCutcheon in the summer of 1991. Louis Sais stated that he saw Webster supply McCutcheon with drugs around the end of 1991 or early in 1992. Sais also admitted engaging in six or seven purchases of cocaine from McCutcheon at approximately this same time period. And Sais recounted an incident occurring in 1990, when Webster and McCutcheon came to his house to manufacture crack. The district court properly assessed the penalty.

CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.