**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-40778
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TOMMIE HASS; RICHARD HASS, also known as Buddy,

Defendants-Appellants.

_____

Appeals from the United States District Court
For the Eastern District of Texas
_____
August 5, 1998

Before KING and DAVIS, Circuit Judges, and HEARTFIELD,[*] District

Judge.

W. EUGENE DAVIS, Circuit Judge:

The Appellants were convicted of conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. For reasons set forth below, we affirm in part, vacate in part, and remand.

I.

In February of 1997, Appellants Tommie Hass ("Tommie") and Richard "Buddy" Hass ("Buddy") were convicted of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. We summarize below the evidence the Government produced in support of the charges alleged in the Indictment.

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

A.

In late 1995, a task force consisting of Drug Enforcement Administration Special Agents, Texas Department of Public Safety Officers, and other law enforcement officials began investigating a drug ring specializing in the sale of methamphetamine. This drug ring, known as the Anderson Organization, consisted of a number of individuals, including Tommie and Buddy Hass, Terry Anderson, Thomas Anderson, Cheryl Cheek, and Phillip Morgan. The task force accumulated evidence through informants, monitored telephone conversations, controlled purchases of illegal narcotics, physical surveillance, and physical evidence obtained through search warrants. Additionally, at trial, several Co-Defendants cooperated with the Government and offered testimony implicating the remaining Defendants. The evidence offered by the Government indicated that Buddy and Tommie Hass were involved in a large-scale methamphetamine distribution ring, mainly as suppliers to Terry Anderson.

Teresa Hass ("Teresa"), Tommie's estranged wife, testified at trial that she began selling methamphetamine with Tommie and Buddy in 1995. She purchased between three and six ounces of methamphetamine each week at $1,200 per ounce and picked up the drugs from Buddy Hass's apartment. Tommie Hass was present at Buddy's apartment on several of these occasions. Through her association with Buddy, Teresa met Kent Erdman ("Erdman"), a cousin of Terry Anderson ("Anderson"). According to Teresa, Erdman sold large quantities of methamphetamine for Buddy and helped the Hasses manufacture methamphetamine.

2

Teresa related an occasion in the fall of 1995 where Buddy and Tommie attempted to sell approximately one-half pound of methamphetamine to Anderson. The night of the sale, Teresa, Buddy, and Anderson met in the parking lot of a Denny's restaurant, where Buddy delivered methamphetamine samples to Anderson. Later that night, Anderson and others met Tommie and Teresa at a prearranged location to pay for the drugs.

Phillip Morgan ("Morgan"), a co-conspirator in the drug ring, testified that he became involved in the sale of methamphetamine with the Hasses and Anderson. Anderson and Erdman set up a methamphetamine lab at Morgan's home and conducted at least five "meth cooks" at the home. Morgan stated that both Buddy and Tommie supplied Anderson with methamphetamine, which Anderson in turn sold. Additionally, Erdman advised Morgan that Buddy and Tommie were teaching him how to "cook" methamphetamine. The "meth lab" was later moved from Morgan's home to the home of Cheryl Cheek, where it was discovered by law enforcement officials.

Bonnie McLeroy ("McLeroy"), Buddy's girlfriend, provided some of the most damaging evidence against the Hasses. McLeroy first became associated with Buddy by selling methamphetamine for Buddy on a consignment basis. McLeroy began living with Buddy Hass in May or June of 1995 and continued to sell drugs for Buddy. McLeroy soon learned that Buddy and Tommie Hass were joint venturers in the manufacture and sale of methamphetamine. On several occasions, Buddy pressured McLeroy to keep current on her payments for the drugs she sold because Tommie demanded his share of the profits. On at least two occasions, Tommie came to McLeroy's home looking

3

for payment for drugs that McLeroy had sold.  McLeroy also observed a methamphetamine sale between Tommie Hass and Terry Anderson at the Fountain of Jupiter apartment occupied by Danny Fowler ("Fowler") and Tommie.  McLeroy was arrested for the distribution of methamphetamine in June of 1995.  She soon learned that she had been "set up" by a confidential informant.  In response, Buddy and Tommie took steps to arrange for the murder of the informant. This plan was later abandoned at McLeroy's request.

In addition to the above, various other witnesses, most of whom were personally involved in the Anderson Organization, testified to the Hass brothers' involvement in the manufacture, distribution, and sale of methamphetamine.  While working in an undercover capacity, Vicky Roberts ("Roberts") made numerous taped conversations with both Hass brothers and with Terry Anderson, and was present at several methamphetamine purchases.  She testified that on several occasions, she accompanied Anderson to Buddy's apartment to purchase drugs.  On one particular occasion, Tommie Hass was present and gave Anderson an accounting of the amount of money Anderson owed to the Hass brothers for past purchases of drugs.  Tommie also visited Roberts's apartment on at least two occasions in search of Anderson to collect money that Anderson owed for previous drug purchases.

The Hass brothers' career in the methamphetamine business began to unravel in late 1995.  In October of 1995, the Dallas Police Department seized an operational "meth lab" from Erdman's apartment. Detectives discovered Buddy's fingerprints on glassware found at the lab.  In November of 1995, law enforcement officials

4

recorded conversations between Roberts and Tommie regarding Roberts's purchase of methamphetamine. Roberts also made a controlled purchase of approximately one ounce of methamphetamine from Tommie.

On October 12, 1996, Tommie Hass was stopped for failing to dim his truck's headlights. Tommie did not immediately follow the officer's instructions to stop and continued along the shoulder of the road for approximately one-half mile. The officer observed a clear plastic bag being thrown from the driver's side window. A subsequent search of the vehicle revealed approximately three grams of methamphetamine, chemical agents to "cut" methamphetamine, and $17,500 in cash.

Soon after Tommie's arrest, law enforcement officials conducted surveillance at the home of Buddy's father in an attempt to locate and arrest Buddy. Officers observed a pickup truck driven by Danny Fowler and apparently carrying a passenger arrive at the residence. Soon thereafter, the truck departed and two officers began to follow it. A license plate check revealed that the truck was registered to Fowler, and the officers also learned that Fowler had outstanding arrest warrants. The officers stopped the truck and arrested Fowler. The truck was impounded and a subsequent search revealed a dismantled "meth lab," which included various chemicals, plastic tubing, Pyrex measuring bowls, and weighing scales. Soon thereafter, Buddy Hass was arrested inside the home of his father.

B.

Before trial, the Government filed a Notice of Sentence

Enhancement for both Hass brothers, pursuant to 21 U.S.C. § 851(a)(1). The Government sought to enhance Tommie's sentence to one of life imprisonment, and to enhance Buddy's sentence to not less than twenty years nor more than life imprisonment. On February 27, 1997, following a seven-day trial, the jury returned its guilty verdicts against both Tommie and Buddy.

In July of 1997, the Hasses were sentenced. Tommie's Presentence Report noted the following prior felony drug convictions: (1) January 16, 1987 for felony possession of a controlled substance in Rockwall County, Texas; (2) August 26, 1996 for felony possession of a controlled substance in Wood County, Texas, on August 12, 1995; and (3) August 26, 1996 for felony possession of a controlled substance in Wood County, Texas, on October 20, 1995. Therefore, pursuant to the sentence enhancement in 21 U.S.C. § 841(b)(1)(A), the district court sentenced Tommie to life imprisonment. Buddy had one prior felony drug conviction, and the district court sentenced him to 262 months imprisonment pursuant to the minimum enhancement in 21 U.S.C. § 841(b)(1)(A). Both Tommie and Buddy appealed, challenging their convictions and sentences on multiple grounds which we consider below.

## II.A.

We first consider Tommie's argument that the Government's evidence was insufficient to support his conviction for conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846, and that the district court erred in denying his Motion for Acquittal. Specifically, Tommie argues that the Government failed to prove that he was a co-conspirator in the

6

Anderson Organization. We review the sufficiency argument under the familiar standard of whether a reasonable juror could conclude that the evidence, viewed in the light most favorable to the verdict, establishes the defendant's guilt beyond a reasonable doubt. United States v. Greer, 137 F.3d 247, 249 (5th Cir. 1998).

In a drug conspiracy case, the government must prove that (1) there was an agreement between two or more persons to possess controlled substances with the intent to distribute; (2) the defendant knew of the conspiracy and intended to join it; and (3) the defendant voluntarily participated in the conspiracy. United States v. Mitchell, 31 F.3d 271, 274 (5th Cir. 1994).

We are satisfied that a reasonable juror could have concluded that Tommie knew of and voluntarily participated in a conspiracy to manufacture and sell methamphetamine. This conclusion follows from our earlier discussion of the record evidence, which includes the following: (1) testimony of several witnesses that Buddy and Tommie were "partners" in their drug sales; (2) the testimony of Vicky Roberts regarding Tommie's demands that Anderson pay for methamphetamine that Anderson had purchased from the Hass brothers; (3) recorded conversations between Vicky Roberts and Tommie and Roberts's undercover purchase of methamphetamine from Tommie; (4) the testimony of Teresa Hass regarding her purchase of methamphetamine from the Hass brothers, and the sale of approximately one-half pound of methamphetamine to Anderson; (5) the testimony of Phillip Morgan that Buddy and Tommie were helping to supervise the methamphetamine laboratory "cooks" at his home; and (6) the testimony of Bonnie McLeroy regarding the sale of

7

methamphetamine from Tommie to Anderson.

Tommie's argument that the Government failed to prove a single conspiracy as alleged in the Indictment is unpersuasive. While Tommie is correct in noting that some of the participants in the conspiracy may have acted independently at times, this does not serve a fatal blow to the overarching conspiracy. At the least, the evidence offered by the Government establishes that through a series of transactions, Tommie conspired to purchase, manufacture, and sell methamphetamine with Buddy and others, which they in turn sold in quantities sufficient for distribution to Anderson and others, who in turn sold to various persons. The evidence was therefore sufficient to allow a reasonable jury to find that Tommie was a member of a single conspiracy as charged in the Indictment.

B.

Next, both Buddy and Tommie argue that the district court erred in admitting evidence of Buddy's fingerprints found on glassware at an operational "meth lab" discovered in Kent Erdman's apartment and evidence of the dismantled "meth lab" found in Danny Fowler's truck after Fowler left the home of Buddy's father. We review rulings on the admissibility of evidence for an abuse of discretion. United States v. Chavez, 119 F.3d 342, 346 (5th Cir. 1997).

1.

Detective John Degan testified at trial that on October 1, 1995, law enforcement officials seized an operational methamphetamine laboratory from the apartment of Kent Erdman. Buddy's fingerprints were found on glass components to the

8

laboratory. Buddy argues that the district court erred in admitting the fingerprint evidence because it is extrinsic evidence under Fed. R. Evid. 404(b), and further, that its probative value is substantially outweighed by unfair prejudice under Fed. R. Evid. 403. We disagree.

First, as the Government correctly points out, the evidence is not extrinsic under Rule 404(b) because it involves conduct within the conspiracy. See United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir. 1998). Such evidence is intrinsic--i.e., direct evidence that Buddy was involved in the manufacture of methamphetamine. Id. Second, we do not agree with Buddy's contentions that the Government failed to show Buddy's connection to the seized laboratory. The Government provided a more than adequate link between Buddy and the methamphetamine lab at Erdman's apartment. Both Teresa Hass and Phillip Morgan testified that Buddy and Erdman were jointly manufacturing methamphetamine and were assisting each other in this endeavor. The fingerprint evidence therefore corroborates the testimony of both Teresa Hass and Phillip Morgan. The district court did not abuse its discretion in admitting this evidence.

2.

Both Buddy and Tommie object to the admission of evidence of the dismantled methamphetamine laboratory seized by the police from Danny Fowler's truck on October 15, 1996, soon after Fowler left the home of Buddy's father. Shortly after Fowler was stopped in his truck, law enforcement officials apprehended Buddy at his father's home. Appellants argue that the Government established no

9

connection between the Hasses and the dismantled lab, and that the evidence was prejudicial extrinsic evidence under Rule 404(b). Again, we disagree.

Evidence of acts committed pursuant to a conspiracy that is offered to prove the defendant's membership or participation in the conspiracy is not extrinsic evidence. United States v. Krout, 66 F.3d 1420, 1431 (5th Cir. 1995). The dismantled methamphetamine lab therefore is not extrinsic evidence; rather, it is relevant evidence of the conspiracy, notwithstanding the fact that it was seized after the date the Government alleged that the conspiracy had ended. This evidence corroborates the testimony of a number of witnesses that the Hass brothers were involved in the manufacture of methamphetamine and operated several methamphetamine labs. Additionally, witness testimony linked Fowler, the driver of the truck, to the Hasses and the manufacture and sale of methamphetamine. Bonnie McLeroy and Vicky Roberts testified that numerous methamphetamine sales were conducted at the apartment shared by Tommie and Fowler, and that Fowler was regarded as the Hass brothers' "go-fer." This evidence establishes a link between the dismantled lab found in the back of Fowler's truck and the Hass brothers, and the district court did not abuse its discretion in admitting this evidence.[1]

C.

---

[1] The lab's connection to Tommie is somewhat more tenuous. However, the district court instructed the jury that evidence pertaining to each defendant should be considered separately and individually. Any undue prejudice to Tommie that may have resulted from the admission of the dismantled lab was cured by the district court's limiting instruction. See United States v. Fields, 72 F.3d 1200, 1215 (5th Cir. 1996).

Tommie Hass protests the enhancement of his sentence to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). He argues, as he did in the district court, that the Government failed to prove that he had two prior felony drug convictions, and therefore, the district court erred in sentencing him to life imprisonment. As an initial matter, the Government concedes that Tommie's January 16, 1987 conviction for felony possession of a controlled substance in Rockwall County, Texas was reversed, and therefore cannot be used for enhancement purposes. Nonetheless, the Government maintains that Tommie's sentence was properly enhanced using the two August 26, 1996 convictions for felony possession of a controlled substance in Wood County, Texas on August 12, 1995, and felony possession of a controlled substance in Wood County, Texas on October 20, 1995.

Section 841(b)(1)(A) of Title 21 of the United States Code provides that any person convicted of a drug felony which carries a penalty of ten years to life imprisonment shall be sentenced to a mandatory term of life imprisonment if the commission of the drug felony occurs "after two or more prior convictions for a felony drug offense have become final." See, e.g., United States v. Puig-Infante, 19 F.3d 929, 947 (5th Cir. 1994) ("For a sentencing court to enhance a defendant's sentence under section 841, the defendant must commit such a violation . . . *after* a prior conviction for a felony drug offense has become final.") (emphasis in original and quotations omitted); United States v. Howard, 115 F.3d 1151, 1158

11

(4th Cir. 1997).[2]  The purpose of the mandatory enhancements in § 841(b) is to deter future criminal conduct and target recidivism. See Puig-Infante, 19 F.3d at 948; United States v. Garcia, 32 F.3d 1017, 1019-20 (7th Cir. 1994).

The question we must address is whether the instant drug offense was committed after the two August 26, 1996 convictions upon which the Government relied for enhancement became final.

In United States v. Morales, 854 F.2d 65 (5th Cir. 1988), this Court considered an objection to a defendant's sentence that was enhanced pursuant to 21 U.S.C. § 841(b)(1)(B), an analogous drug enhancement statute containing the same language as § 841(b)(1)(A).[3]  The defendant objected to the enhancement, arguing that under Texas law his conviction was not final.  After noting that "the meaning to be assigned to the term 'ha[s] become final' in 21 U.S.C. § 841(b)(1)(B) is a question of federal, not state law," the court held that

> the final-conviction language of § 841(b)(1)(B) applies to a conviction which is no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, *or because of the passage, without action, of the time for seeking appellate review.*  [The defendant] did not appeal his Texas felony conviction and the time for doing so has passed; thus, for federal sentencing

---

[2]  Tommie's conspiracy conviction carries a statutory penalty range of not less than ten years nor more than life imprisonment. See 21 U.S.C. §§ 846, 841(b)(1)(A).

[3]  21 U.S.C. § 841(b)(1)(B) applies to any person convicted of a drug felony which carries a penalty of not less than five years and not more than 40 years, and provides for the following enhancement:  "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . . ."  Id.

12

> enhancement purposes under § 841(b)(1)(B), that conviction *has become final.*

Id. at 65, 68-69 (emphasis added and internal citations omitted). The court's language in Morales is clear: for § 841(b)(1) enhancement purposes, a conviction does not become final until the time for seeking direct appellate review has elapsed. The case also makes it clear that enhancement is authorized only if the commission of the § 841 offense occurs after the prior felony drug offense(s) has become final.[4]

At issue in this case is whether Tommie's two prior drug felony offenses, arising from incidents in August and October of 1995 in Wood County, Texas, became final before the commission of the instant drug conspiracy offense. The record reflects that Tommie was sentenced for both prior offenses on August 26, 1996. Under Rule 26.2 of the Texas Rules of Appellate Procedure, a criminal defendant has thirty days from the day sentence is imposed to file a notice of appeal. Tex. R. App. P. 26.2(a)(1). Thus, the time for direct appellate review of these convictions did not expire until September 26, 1996, and the convictions did not become "final" for enhancement purposes under Morales until that time. See also Puig-Infante, 19 F.3d at 947 ("conviction becomes final when it is no longer subject to examination on direct appeal")

---

[4] See also United States v. Brazel, 102 F.3d 1120, 1163 (11th Cir. 1997) ("While the record does not show whether [the defendant] appealed, it is clear he would not have exhausted his appeal rights under state rules until after the conspiracy had ended. Thus, the provision for enhanced sentencing based on prior, final convictions was inapplicable."); United States v. Hughes, 924 F.2d 1354, 1358-62 (6th Cir. 1991) (affirming defendant's sentence enhancement because defendant continued conspiracy for approximately three months after prior felony drug offense became final).

13

(citing <u>Morales</u>); <u>United States v. Brazel</u>, 102 F.3d 1120, 1163 (11th Cir. 1997).  According to the Indictment, the instant drug conspiracy offense for which Tommie Hass was convicted ended on September 11, 1996, well before Tommie's prior felony drug offenses became final.

The Government attempts to salvage Tommie's sentence enhancement by arguing that Tommie continued to engage in substantial drug-related conspiratorial activity up until his arrest on October 12, 1996.  These facts, even if true, are not relevant to the § 841(b) enhancement.  We read the statute as authorizing enhancement only if the felony drug offense, *for which the defendant was convicted*, is committed after the prior convictions have become final.  Tommie was convicted of the felony drug conspiracy offense as charged in the Indictment.  The Indictment alleged that this conspiracy ended on September 11, 1996, and Tommie does not stand convicted for conduct occurring after that date.  Thus, the only relevant conduct for purposes of the § 841(b)(1) enhancement is conduct which occurred on or before September 11, 1996, the date the offense ended.  Because this date is some fifteen days before Tommie's prior convictions became final, Tommie committed the conspiracy offense before his prior convictions became final, and the district court erred in enhancing Tommie's sentence to life imprisonment.

D.

We are left with the Hass brothers' arguments that the trial court erred in (1) admitting evidence of Tommie's October 12, 1996 arrest for possession of methamphetamine, (2) restricting the

14

cross-examination of a government witness, and (3) adjusting Buddy's offense level pursuant to U.S.S.G. § 3B1.1(c) for being a supervisor/leader in the drug conspiracy. After reviewing the record and the arguments of the parties, we find no abuse of discretion or other error in the district court's rulings on these issues.

### III.

For the reasons stated above, we AFFIRM the convictions of Richard "Buddy" Hass and Tommie Hass for conspiracy to manufacture and distribute methamphetamine. We also AFFIRM Buddy Hass's sentence. However, because the Government failed to establish that Tommie Hass had two final felony drug convictions at the time of the commission of the instant offense, we VACATE the district court's imposition of a life sentence for Tommie Hass, and REMAND for his resentencing.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.