United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 24, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————————

No. 05-41547

(Summary Calendar)

———————————

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

versus

ERNESTO GARZA,

                    Defendant - Appellant.

—————————————————————————————————————

Appeal from the United States District Court
For the Southern District of Texas
USDC No. 5:05-CR-712-ALL

—————————————————————————————————————

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

    Ernesto Garza pleaded guilty to aiding and abetting the transportation of an undocumented

alien for the purpose of commercial advantage or private financial gain.  8 U.S.C. § 1324(a)(1)(B)(i);

———————————————

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

18 U.S.C. § 2. He was sentenced to 24-months prison, three-years supervised release, and a $500 fine. Garza appeals a six-level enhancement of his sentence for possession of a dangerous weapon. *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.1(b)(4)(c) (2004).

Four undocumented aliens entered the United States illegally near Laredo. They traveled to a hotel and remained there for several days until one of them made a phone call and arranged for them to be transported to San Antonio. Shortly thereafter, a taxi arrived at their hotel, picked up two of them, and drove them to a convenience store where Garza was waiting. According to one of the aliens, an unidentified person told them to climb into the toolbox on Garza's truck and that they were each to pay $1,000 and $1,200 upon their arrival in San Antonio. Garza disputes this fact, saying that he had no prior arrangement to transport the aliens and that it was a spur-of-the-moment decision for him to take them to San Antonio. On the way to San Antonio, border patrol agents stopped Garza and found the undocumented aliens in his toolbox. They also found a handgun in Garza's glove compartment. It is disputed as to whether the handgun was loaded.

After Garza pled guilty, the district court enhanced his sentence by six levels for possession of a dangerous weapon, based on the handgun found in his glove compartment. § 2L1.1(b)(4)(C). Rather than finding the gun to have been loaded, the district court held that an unloaded gun may be a dangerous weapon. This Court reviews de novo the district court's interpretation and application of the Guidelines and its factual determinations for clear error. *United States v. Charon*, 442 F.3d 881, 887 (5th Cir.), *cert. denied*, 127 S.Ct. 260 (2006).

Garza first argues that the gun found in his glove compartment was not a "dangerous weapon" because it was not loaded. As "definitions of terms that are used frequently in the guidelines . . . are of general applicability," U.S. SENTENCING GUIDELINES MANUAL § 1B1.1, cmt. n. 1, Garza

argues that the commentary and caselaw to § 2D1.1)) the dangerous weapon enhancement for crimes involving controlled substances)) should provide guidance to the instant case. He then cites commentary to § 2D1.1, which states that the dangerous weapon "enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." § 2D1.1 cmt. n.3 (2004). Garza takes this commentary to mean that an unloaded firearm is not a dangerous weapon under § 2D1.1 and hence should not be one under § 2L1.1(b)(4)(c).

We agree with Garza that our treatment of the dangerous weapons enhancement for drug crimes under § 2D1.1 is applicable to the instant case. § 1B1.1, application n. 1. Contrary to Garza's understanding of the Guidelines, however, under § 2D1.1, the fact that a gun is loaded or not is not of material importance to the dangerous weapon enhancement. *See United States v. Mitchell*, 31 F.3d 271, 278 (5th Cir. 1994); *United States v. Jacquinot*, 258 F.3d 423, 431 (5th Cir. 2001). In fact, our caselaw acknowledges that, in cases of drug crimes, "the mere presence of a gun, loaded or not, can escalate the danger." *Jacquinot*, 258 F.3d at 431. Garza does not argue that his sentence should be treated differently from *Mitchell* and *Jacquinot*; thus, we decline to vacate his enhancement for the reason the that gun found in his truck was unloaded.

Garza also disputes the district court's factual finding that the gun was possessed in connection with the crime, contending instead that he was carrying it for personal protection at a ranch to which he was traveling. *See United States v. Marmolejo*, 106 F.3d 1213, 1216 (5th Cir. 1997) (holding that, in a drug trafficking case, the dangerous weapon enhancement does not apply if it is "clearly improbable" the weapon was connected with the case). There is, however, evidence that Garza planned, in advance, to transport illegal aliens. There is also evidence that Garza was not employed by a ranch and had no intention of going to one. Thus, the district court did not clearly err

in deciding that the handgun was possessed in connection with the offense. See *Charon*, 442 F.3d at 890-91 (declining to reverse the district court if its view of the evidence is "plausible in light of the record viewed in its entirety.").

Accordingly, we AFFIRM.