**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

WILLIAM DAVID KLENSCH,

*Defendant-Appellant*.

No. 22-50222

D.C. No.
3:22-cr-01359-
BAS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted July 18, 2023
Pasadena, California

Filed December 8, 2023

Before: A. Wallace Tashima and Danielle J. Forrest,
Circuit Judges, and Kathleen Cardone,[*] District Judge.

Opinion by Judge Forrest;
Partial Dissent by Judge Cardone

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

## SUMMARY[**]

## Criminal Law

The panel affirmed in part and vacated in part a sentence imposed following the defendant's guilty plea to one count of transportation of an illegal alien, and remanded for resentencing.

Klensch argued that the district court applied the wrong legal standard when it determined that he was not entitled to a minor-role reduction under U.S.S.G. § 3B1.2 because he personally transported two men. Observing that the district court's cursory explanation for denying the minor-role reduction gives no indication that it considered the factors set forth in the Guideline commentary or did any comparative analysis of Klensch's conduct, the panel concluded that the district court did not apply the correct legal standard in denying a minor-role reduction. Because the Government did not argue harmless error, the panel vacated the sentence and remanded for the district court to determine whether Klensch played a minor role in the transportation of illegal aliens consistent with the factors listed in § 3B1.2 cmt. n.3(c) and this opinion.

Klensch argued that the district court erred by imposing a dangerous-weapons enhancement under U.S.S.G. § 2L1.1(b)(5)(C) because he did not possess the stun gun in his car in connection with his illegal smuggling activity. The panel held that even assuming that a nexus standard is required under § 2L1.1(b)(5)(C), as it is under U.S.S.G.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 2D1.1, the district court could still have applied the dangerous-weapon enhancement. The panel therefore concluded that even if the district court applied an incorrect standard of proof by not requiring the Government to prove a nexus to the stun gun, such error was harmless.

District Judge Cardone dissented from the majority's decision to vacate and remand for resentencing on the minor-role adjustment. She wrote that the majority's decision marks the first time that this Court has remanded for minor-role resentencing on a record that contains no affirmative misstatement of the law by either the district court or the party whose argument the district court adopted, and does so on a record that would easily sustain the denial of minor role for Klensch's failure to meet *his* burden to submit sufficient evidence of other known participants.

## COUNSEL

Jessica Agatstein (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Andrew Y. Chiang (argued), Assistant United States Attorney; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Randy S. Grossman, United States Attorney; United States Department of Justice, United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

FORREST, Circuit Judge:

Defendant-Appellant William Klensch appeals his sentence after pleading guilty to one count of transportation of an illegal alien. Over Klensch's objection, the district court followed the presentence report's (PSR) recommendations to not grant a minor-role reduction under U.S.S.G. § 3B1.2 and to impose a six-level dangerous-weapon enhancement under § 2L1.1(b)(5)(C) because Klensch possessed a stun gun during his offense. We have jurisdiction under 28 U.S.C. § 1291, and we affirm as to the dangerous-weapon enhancement and vacate and remand for resentencing for the district court to conduct a proper minor-role analysis.

## I. BACKGROUND

In May 2022, a home inspector with whom Klensch had worked offered him $500.00 to pick up an unspecified number of "workers" at a grocery store near the border in Jacumba, California and transport them to Spring Valley, California. Klensch drove to the designated location and picked up two men. That same day, a United States Border Patrol agent working in the area was notified to watch for a rental car matching the general description of Klensch's vehicle that had raised law enforcement's suspicion. The agent observed Klensch's vehicle drive behind a local store, reappear a few minutes later, pull onto the highway, and drive away at a high rate of speed. Another agent was contacted and pulled over Klensch's vehicle. Klensch consented to the agent opening the rear door of his car, and the agent discovered two men trying to hide in the back seat.

Border Patrol determined that the two men were Mexican citizens without authorization to be in the United States, and all the occupants in the car were arrested and transported to a Border Patrol station. Agents discovered that Klensch had an extensive criminal history. They also found a stun gun and several packages of personal-use drugs in Klensch's driver-side door compartment. Klensch later explained that most of his personal property was in his car because he was homeless and preparing to move to Washington.

The two male passengers confirmed that they were Mexican citizens without authorization to be in the United States. One of them disclosed that he paid $8,500 to be illegally smuggled into the United States. He also explained that someone directed him by phone to an initial location, where he hid until he received instructions to go to the location where Klensch picked him up.

The Government charged Klensch with two counts of illegal transportation of an alien under 8 U.S.C. § 1324(a)(1)(A)(ii). Klensch pleaded guilty to one count under a plea agreement, and he agreed to request a PSR. The PSR calculated an offense level of 15 and a category VI criminal history, resulting in a Guideline range of 33–41 months' imprisonment. The PSR recommended against applying a two-level minor-role reduction because the evidence was insufficient "to support that [Klensch] was substantially less culpable than other participants to support a reduction under USSG § 3B1.2." And in its offense-level calculation, the PSR applied a six-level dangerous-weapon enhancement under U.S.S.G. § 2L1.1(b)(5)(C) for possession of the stun gun during the offense. The PSR recommended 37 months' imprisonment and three years' supervised release.

Klensch objected in writing to the PSR. He argued that he was entitled to a minor-role reduction because the factors governing this analysis weighed in his favor and he was "substantially less culpable than the average participant in the criminal activity of migrant smuggling." He also argued that the dangerous-weapon enhancement was improper because the Government had not proven by clear and convincing evidence that he possessed the stun gun in relation to the crime charged.

Klensch calculated his Guideline range as 6–12 months' imprisonment based on, among other things, a base offense level of 12, a two-level minor-role reduction, and no dangerous-weapon enhancement. He argued for a 13-month custody sentence with no supervision because of "the things in his car." The Government calculated a 18–24 months Guideline range and requested a 21-month sentence.

At the sentencing hearing, Klensch argued both the minor-role reduction and dangerous-weapons enhancement. The district court did not inquire about the minor-role reduction, but it did ask Klensch why he had the stun gun. Klensch responded that he had it for "protection" in case he needed "to deter anybody away from" him. Klensch's counsel interjected and explained that Klensch was homeless and in the process of moving to Washington to be with family, and thus had all his personal property with him in his car.

After hearing the parties' arguments, the district court issued its decision from the bench, following the recommendations in the PSR. In cursory terms, the district court stated that it declined to apply a minor-role reduction because "Klensch was the one transporting the individuals" and the evidence did not show "his role was minor." And the

district imposed the dangerous-weapon enhancement because "[Klensch] was engaged in a dangerous venture," and there was "evidence that [the stun gun] was related to the offense. It was possessed right where he could grab it, in case he needed it against the individuals who were in the car with him or anyone who challenged him while he was committing this offense." Based on its findings, the district court calculated a Guideline range of 33-41 months, and it sentenced Klensch to a low-end 33 months' imprisonment with three years of supervised release. Klensch timely appealed.

## II. DISCUSSION

### A. Minor-Role Adjustment

Klensch contends that he was entitled to a minor-role reduction because he had no knowledge of the full alien smuggling operation, he was asked to pick up "workers" and did not know he would be transporting illegal aliens, and he was paid only a small sum. He argues that the district court applied the wrong legal standard when it determined that he was not entitled to this reduction because he personally transported the two men.

### 1.

As an initial matter, the Government argues that this issue must be reviewed for plain error because Klensch did not challenge the sufficiency of the district court's reasoning below. Federal Rule of Criminal Procedure 51(b) sets out "a contemporaneous-objection rule": to preserve a claim of error, a party must "'inform[] the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.'" *Puckett*

*v. United States*, 556 U.S. 129, 135 (2009) (quoting Fed. R. Crim. P. 51(b)). Sentencing objections "must have a specific substantive basis" that "provides the district court with an opportunity to address the error in the first instance and allows this court to engage in more meaningful review." *United States v. Grissom*, 525 F.3d 691, 694 (9th Cir. 2008) (citation omitted). Such objections may be raised at the sentencing hearing or in written objections to the PSR. *See United States v. Hammond*, 742 F.3d 880, 884 (9th Cir. 2014) (concluding that objections made in a "sentencing memorandum and at sentencing" are "preserved"); *United States v. Barnes*, 993 F.2d 680, 684 (9th Cir. 1993) (concluding that "written objections to the presentence report" are "sufficient to preserve the issue").

Here, Klensch argued, both in his objections to the PSR and at his sentencing hearing, that he was "less culpable than the average" participant and thus was entitled to the minor-role reduction. He specifically asserted that a comparative analysis is required and that it is not determinative "that a defendant performs an essential or indispensable role in the criminal activity." This is the same thrust of his argument on appeal: that the district court erred by not comparing his level of culpability to that of the other participants involved in his criminal activity and by mistakenly asserting that he did not qualify for a minor-role reduction because he "was the one transporting the individuals." Because we conclude that Klensch properly preserved his challenge related to the minor-role reduction, we review de novo whether the district court applied the correct legal standard in denying a minor-role reduction, and we review its factual findings for clear error and its application of the Guidelines to the facts for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

**2.**

Turning to the merits, § 3B1.2(b) of the Guidelines allows for a reduction in the offense level if the defendant "was a minor participant in [the] criminal activity." To receive this reduction, the defendant must prove that he is "*substantially less culpable* than the average participant in the charged criminal activity." *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018) (internal quotation marks and citation omitted). Before 2015, there was confusion in the courts about whether the proper comparison was to the defendant's co-participants in the specific crime charged or to those involved in the type of crime at issue more generally. *Id.* at 915. The Sentencing Commission amended the Guideline commentary to make clear that the proper comparison is to the co-participants in the crime charged. *Id.* The Commission also determined that the minor-role reduction "was being 'applied inconsistently and more sparingly than the Commission intended,'" and it amended the commentary "to induce district courts to grant mitigating-role adjustments more frequently." *United States v. Rodriguez*, 44 F.4th 1229, 1233 (9th Cir. 2022) (citation omitted).

In its amendment, the Commission listed five factors that we have held district courts *must* consider "when determining whether to grant a mitigating-role adjustment." *Id.* Of particular import here, the Commission also cautioned that "*[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative*." U.S.S.G. § 3B1.2 cmt. n.3(C) (emphasis added); *see also Diaz*, 884 F.3d at 915. It expressly disapproved of cases denying minor-role adjustments to defendants because they were "'integral' or 'indispensable'

to the commission of the offense." U.S.S.G. Supp. to App. C. Amend. 794.

We have since instructed that "a district court must proceed in three steps" when determining "whether a defendant is substantially less culpable than the average participant in the offense." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (9th Cir. 2022) (emphasis added). First, it must identify all "individuals for whom there is 'sufficient evidence of their existence and participation in the overall scheme.'" *Id.* (citation omitted). "Second, the court must calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline." *Id.* And third, it "must compare the defendant's culpability to that average." *Id.* If this calculation shows that "the defendant is substantially less culpable than that average and meets the other criteria, he should be granted a mitigating role adjustment." *Id.*

Here, the district court's analysis of the minor-role reduction is thin. It did not question the parties about or discuss at the sentencing hearing the factors that govern the comparative-liability analysis or the facts relevant to that analysis. Rather, after the parties' arguments, it simply pronounced: "In this particular case, Mr. Klensch was the one transporting the individuals. And I don't find that there is sufficient evidence that his role was minor in this case."

We assume district courts "kn[o]w the law and underst[and their] obligation to consider all of the sentencing factors," *Diaz*, 884 F.3d at 916, and they do not have to "tick off sentencing factors to show that [they] considered them," *id.* at 914 (internal quotation marks and citations omitted). But they must explain their sentencing decisions. *United*

*States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014). Requiring an explanation for a given sentencing decision "permit[s] meaningful appellate review." *United States v. Carty*, 520 F.3d 984, 992–93 (9th Cir. 2008) (en banc); *see also Emmett*, 749 F.3d at 820 ("It is a general principle of federal sentencing law that district courts have a duty to explain their sentencing decisions."); *cf. Gall v. United States*, 552 U.S. 38, 50 (2007) (explaining district courts must "adequately explain the chosen sentence"). It also "promote[s] the perception of fair sentencing." *Emmett*, 749 F.3d at 820 (internal quotation marks and citation omitted).

Here, the district court's cursory explanation gives no indication that it considered the required factors or did any comparative analysis of Klensch's conduct. While it was not required to mechanically analyze each factor or reference them verbatim on the record, *Diaz*, 884 F.3d at 914, 916, providing *some* explanation, even in general terms, of how the considerations embodied in the factors apply in this case "is part and parcel of considering" them. *Emmett*, 749 F.3d at 820.

In *Diaz*, which we decided before *Dominguez-Caicedo*, we had "no trouble determining from the sentencing memoranda and the transcript of the sentencing hearing that the district court was well aware of the" minor-role factors. *Id.* at 913. We therefore rejected the defendant's argument that the district court erred by failing to mention the factors in its decision. *Id.* at 916. But we were troubled by the district court's statement that the defendant's role "of scouting and acting as a courier to smuggle a large amount of drugs across the border was not minor" because such reasoning could "reflect[] reliance on courier conduct as dispositive," and the amendment to the commentary on the minor-role adjustment "clarified that performance of an essential role . . . is not

dispositive." *Id.* at 917. The same is true here. The district court's singular and cursory explanation for not granting a minor-role reduction, referencing only that Klensch drove the two men, indicates that the district court improperly relied "on courier conduct as dispositive," despite the Guidelines' clarification "that performance of an essential role . . . is not dispositive."[1] *Id.*

The Government disputes that the district court applied the wrong legal standard. First, it argues that the district court's statement was in reference to Klensch's "unique culpability, not his indispensability." The Government makes compelling points that human smugglers are more culpable than drug smugglers because they make choices that impact "life and death," such as whether to conceal the passengers, gain compliance from potentially unruly passengers, bring water or other necessities for the passengers, and so forth. But the problem is none of this reasoning was articulated by the district court. *See Emmett*, 749 F.3d at 821–22 (remanding where "the single explanation in the record" did not "explain why" the defendant's "request should be denied under the applicable legal standard"). And it is just as plausible, based on what the district court did say, that it concluded Klensch did not

---

[1] The Government contends that plain-error review applies because Klensch did not argue to the district court that its reasoning was insufficient. As discussed above, it is true that a defendant must raise procedural errors to the district court, which includes a district court's failure to provide adequate explanation for its sentencing decision. *See United States v. Ayala-Nicanor*, 659 F.3d 744, 746–47 (9th Cir. 2011). But here we find a substantive error—that the district court denied Klensch a minor-role reduction *because he physically transported* the two men who were in the U.S. illegally. And this issue was plainly preserved. *See Barnes*, 993 F.2d at 684; *see also Dominguez-Caicedo*, 40 F.4th at 960 (discussing standard of review for minor role analysis).

play a minor role because transporting the two men who entered the U.S. illegally away from the border was too integral to be minor conduct.

Second, the Government argues that the district court rejected Klensch's untruthful account about his level of involvement, as evidenced by the district court's statement that it did not think there was "sufficient evidence that [Klensch's] role was minor." As an initial matter, the Government did not dispute the veracity of the facts recited in the PSR.[2] We treat facts as undisputed when "they are drawn solely from a Presentence Report whose accuracy neither party challenged." *Gasca-Ruiz*, 852 F.3d at 1168. We therefore reject the Government's argument to the extent it advances a new factual dispute.

To the extent the Government is arguing that Klensch failed to meet his burden of showing that he performed a minor role in the criminal activity, it is true that the district court can refuse to grant a minor-role reduction if it finds that the evidence failed to show that there were co-participants or that the defendant's role was minor in comparison to his co-participants. *See Diaz*, 884 F.3d at 914 (explaining that the defendant bears the burden of proof); *see*

---

[2] The PSR includes Klensch's statement that he received $500.00 from the home inspector for whom he worked to pick up the two men. The Government notes that the PSR also identifies two other participants— the person who negotiated the $8,500 smuggling fee and the person who guided one of the men to Jacumba over the phone. The district court did not explicitly find that there was insufficient evidence of these three participants and their involvement or otherwise indicate that it was rejecting the PSR's or Klensch's account of the events. *Cf. Dominguez-Caicedo*, 40 F.4th at 966 (explaining the district court "made clear that it did not believe" the defendant's story where it explicitly stated it "frankly" did not "buy" or "accept it").

*also Dominguez-Caicedo*, 40 F.4th at 960 (explaining that a district court must first identify individuals for whom there is sufficient evidence of their existence and participation in the scheme). But, again, the district court's cursory explanation does not make clear that either of these rationales were the basis for its decision to deny a minor-role reduction. While we generally assume that the district court applied the correct legal standard, we cannot do so when the record indicates the contrary. *See Diaz*, 884 F.3d at 917–18.

Because we conclude that the district court did not apply the correct legal standard in denying a minor-role reduction, we must determine the proper course for remedying this error. Errors that impact Guideline calculations typically require remand unless the Government establishes the error was harmless. *See Dominguez-Caicedo*, 40 F.4th at 963; *see also United States v. Bankston*, 901 F.3d 1100, 1108 (9th Cir. 2018) ("[Where] we cannot say with certainty that the district court's sentencing error was harmless, we must remand for resentencing."). The Government has not argued harmless error here. Therefore, we vacate Klensch's sentence and remand for resentencing with instruction that the district court reassess the minor-role reduction consistent with U.S.S.G. § 3B1.2 cmt. n.3(C) and this opinion.[3]

### B. Dangerous-Weapon Enhancement

Klensch also argues that the district court erred by imposing a dangerous-weapons enhancement because he did not possess the stun gun in his car in connection with his illegal smuggling activity. "[W]e review the district court's

---

[3] Klensch asks us to affirmatively hold that he is entitled to the minor-role reduction. We decline to make this determination in the first instance.

identification of the correct legal standard de novo . . . the district court's factual findings for clear error," and the "district court's application of the Sentencing Guidelines to the facts of a given case . . . for abuse of discretion." *Gasca-Ruiz*, 852 F.3d at 1170 (9th Cir. 2017).

Under U.S.S.G. § 2L1.1(b)(5)(C), a sentence for transporting an illegal alien is increased to the greater of two levels or an overall increase to offense level 18 "[i]f a dangerous weapon (including a firearm) was possessed."[4] Klensch does not dispute that he possessed a stun gun during his offense or that a stun gun qualifies as a dangerous weapon under the Guideline. Klensch argues only that the district court had to find a nexus between his possession of the stun gun and "the criminal act" and that it erred in applying a some-evidence standard in making this finding, rather than a clear-and-convincing-evidence standard.

The plain text of § 2L1.1(b)(5)(C) does not require a nexus between possession of a weapon and commission of the crime. But § 1B1.3 addresses enhancements based on "specific offense characteristics"—such as § 2L1.1(b)(5)(C)—and requires courts to consider acts "that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1). Thus, read together, § 1B1.3 and § 2L.1.1(b) require at least that the court find that the defendant possessed a dangerous weapon during the commission of the offense.

Klensch relies on cases interpreting § 2D1.1 (a provision addressing weapons possession in connection with certain

---

[4] The Guideline provides greater enhancements where a dangerous weapon is discharged or brandished, not merely possessed. *Id.* § 2L1.1(b)(5)(A)-(B).

drug-related offenses) to argue that a nexus between his possession of the stun gun and his crime must be proven by clear and convincing evidence. Section 2D1.1 has a similar dangerous-weapon enhancement as § 2L1.1, but the commentary to the § 2D1.1 enhancement states that it should not be applied if "it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1 cmt. n.11(A). The commentary to § 2L1.1 contains no such language, and the Government argues that as a matter of plain text no nexus is required under § 2L1.1. We need not resolve today whether a nexus standard like that in § 2D1.1 is required under § 2L1.1(b)(5)(C), because even assuming that it is, the district court could still have applied the dangerous-weapon enhancement.

The enhancement for possession of a weapon under § 2D1.1 applies where "the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *United States v. Gomez*, 6 F.4th 992, 1008 (9th Cir. 2021) (internal quotation marks and citation omitted). The government need only prove "that the weapon was possessed at the time of the offense." *United States v. Alaniz*, 69 F.4th 1124, 1126–27 (9th Cir. 2023). And if it meets this burden, the enhancement "applies unless *the defendant* shows it was 'clearly improbable' that the weapon was possessed in connection with the offense." *Id.* at 1127 (citation omitted) (emphasis added).

Klensch does not dispute that he had the stun gun in his car when he transported the two men. By extension he does not dispute that the Government met its initial burden. Thus, under the § 2D1.1 standard, the burden would fall on Klensch to prove by clear and convincing evidence that it was "improbable that the weapon was connected to the offense." *Id.* at 1126. This he cannot do. Klensch

acknowledged the stun gun was within his reach when he was transporting the two men, and he told the district court at his sentencing hearing that he had the stun gun "for . . . my own protection, just if I need to deter *anybody* away from me." Even if Klensch was concerned about protecting himself from risks related to homelessness, that does not prevent the stun gun from also serving to protect him in the course of his criminal activity. Klensch agreed to pick up strangers at an unfamiliar location and drive them in his car (which apparently contained most of his possessions). It is understandable for someone in this situation to want some means of self-protection. And it was not an abuse of discretion for the district court to conclude that the stun gun *located within Klensch's reach in his car* had a nexus to his criminal conduct *that occurred in the car*. We therefore conclude that even if the district court applied an incorrect standard of proof by not requiring the Government to prove a nexus to the stun gun, such error was harmless because the district court "would have imposed the same sentence" even if it had required the Government to make this showing. *Williams v. United States*, 503 U.S. 193, 203 (1992); *see also United States v. Halamek*, 5 F.4th 1081, 1091 (9th Cir. 2021) (applying *Williams*'s harmless-error standard). We affirm the district court's imposition of the dangerous-weapons enhancement under § 2L1.1(b).

## CONCLUSION

We affirm the district court's application of the six-level dangerous-weapons enhancement. However, because the district court erred in its analysis of the two-level minor-role reduction, we vacate Klensch's sentence and remand for resentencing. At resentencing, the district court is directed to determine whether Klensch played a minor role in the

transportation of illegal aliens consistent with the factors listed in U.S.S.G. § 3B1.2 cmt. n.3(C) and this opinion.

**AFFIRMED in part, VACATED, and REMANDED.**

---

CARDONE, District Judge, dissenting in part:

I agree with the majority's analysis affirming the district court's imposition of the dangerous-weapons enhancement and join that portion of the opinion in full. However, I respectfully dissent from the majority's decision to vacate and remand for resentencing on the minor-role adjustment.

The district court justified its decision to deny Klensch a minor-role adjustment as follows: "In this particular case, Mr. Klensch was the one transporting the individuals. And I don't find that there is sufficient evidence that his role was minor in this case." There are at least two plausible readings of this admittedly terse explanation. Either one requires us to do some reading between the lines. On the first reading, the district court would have found that "[because] Mr. Klensch was the one transporting the individuals, [he played an essential role, and therefore,] I don't find that there is sufficient evidence that his role was minor in this case." On the second reading, the district court would have found that "Mr. Klench was the one transporting the individuals[, and there is very little in the record about the other known participants, so] I don't find that there is sufficient evidence that his role was minor in this case."

I agree with the majority that "it is just as plausible" to gather from the district court's two-sentence explanation an invalid rationale for denying minor role as it is to infer a valid one. Maj. at 12. At least, so long as that explanation

is read in isolation. But more is required to warrant reversal under this Court's precedents. "We assume district courts know the law and understand their obligation to consider all of the sentencing factors, and they do not have to tick off sentencing factors to show that they considered them." Maj. at 10 (cleaned up) (quoting *Diaz*, 884 F.3d at 914, 916). To be sure, criminal sentences must be explained "sufficiently to permit meaningful appellate review," and "[i]t is most helpful for this to come from the bench." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc). "[B]ut adequate explanation in some cases may also be inferred from the PSR or the record as a whole." *Id.*

Here, when viewed in light of the PSR and the record as a whole, the best reading of the district court's explanation is that Klensch failed to carry his burden of showing he played a minor role. *See United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018) ("The defendant bears the burden of proving that he or she is entitled to a downward adjustment based on his or her role in the offense." (cleaned up) (quoting *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006))). This was Probation's conclusion in the PSR: "Based on the available information regarding his role, there is not enough to support that he was substantially less culpable than other participants to support a reduction under USSG § 3B1.2." And although Klensch objected to Probation's legal conclusion that he should be denied minor role, he made no objection to its factual basis. Instead of proffering additional facts about the home inspector or other known participants—about whom the record contains little information—Klensch argued that the facts recounted in the PSR, applied to the minor-role factors, warranted a

downward departure.[1]  The crux of his argument was that he was "substantially less culpable than the average participant in the criminal activity of migrant smuggling," a "worldwide," "clandestine enterprise."   He offered information about the roles "typically" filled in human smuggling operations and argued his own role was minor "in the big scheme of migrant smuggling."

But none of this is material to a minor-role analysis.  "We have repeatedly held that the relevant comparators are the *actual* participants in the defendant's crime."  *United States v. Dominguez-Caicedo*, 40 F.4th 938, 965 (9th Cir. 2022) (collecting cases).  And "by 'actual participants,' we mean only participants for whom there is 'sufficient evidence of their existence and participation.'"   *Id.* (quoting *United States v. Rojas-Millan*, 234 F.3d 464, 474 (9th Cir. 2000)).  In *Dominguez-Caicedo*, we affirmed the denial of minor role for one of the three defendants who made similar arguments appealing to "unknown members of 'a giant, complex drug-trafficking organization' that may have been involved in the manufacture and distribution of the drugs [the defendant] was transporting."  *Id.* at 965.  And we affirmed the denial for a second defendant who, like Klensch, failed to object to the omission of factual information about other known participants when challenging the PSR's recommendation to deny minor role for lack of evidence.  *Id.* at 966–67.  These decisions would provide firm footing for the district court here to deny Klensch a minor-role adjustment on the ground that he did not carry his burden to show himself substantially less culpable than the average of the other actual participants

---

[1] In response to Klensch's objections, Probation reiterated its conclusion that "the limited available information" was "not enough" to support a minor-role reduction.

in the crime.  Rather than adopt this reasonable view of the impetus for the district court's decision, the Majority sends the case back for a more meticulous explanation.

This marks the first time that this Court has remanded for minor-role resentencing on a record that contains no affirmative misstatement of the law by either the district court or the party whose argument the district court adopted.[2]  In *Dominguez-Caicedo*, we reversed the denial of minor role for only one of the three defendants, and we did so because the district court had explicitly excluded at least one identified, known participant from consideration.  *Id.* at 963.  Here, the district court made no such unambiguous misapprehension of law.  Instead, as in *Diaz*, we are confronted with a terse, vague explanation for the minor-role denial.  But in *Diaz*, "[t]he difficulty [was] that the district court adopted the government's argument with little elaboration, and the government's argument included an incorrect interpretation" of the sentencing guidelines.  884 F.3d at 918.

In this case, unlike *Diaz*, the Government did not misstate the law to the district court.  Certainly, the

---

[2] The Majority relies on *United States v. Emmett*, as an example of a case in which this Court remanded on the basis of a terse explanation from the district court that made no affirmative misstatement of the law.  Maj. at 11; *see* 749 F.3d at 821–22.  In *Emmett*, the district court denied the defendant's motion for early termination of supervised release.  *Id.* at 820.  It did so in a brief order, "without a hearing or any response from the government or probation office."  *Id.* at 821.  Here, by contrast, a hearing was held, the issues were argued by Klensch and the Government, and Probation submitted its position in a PSR.  Therefore, unlike in *Emmett*, a permissible explanation for Klensch's sentence "may . . . be inferred from . . . the record as a whole."  *See id.* (quoting *Carty*, 520 F.3d at 992).

Government did not encourage the district court to commit the supposed error that forms the basis for the Majority's reversal—that Klensch may have been denied minor role because of his indispensable role as transporter. Indeed, the only mention of an indispensable role in the record below comes from Klensch himself, who correctly informed the court that "[e]ven though his role as a transporter in this offense was necessary and indispensable, that alone is not a determinative role factor." In these circumstances, "our caselaw requires that we assume the district judge knew the law." *See Diaz*, 884 F.3d at 916.

In sum, today's decision goes beyond *Dominguez-Caicedo* and *Diaz* by vacating and remanding for resentencing in the absence of any affirmative misstatement of the law by either the court or the Government. And it does so on a record that would easily sustain the denial of minor role for Klensch's failure to meet his burden to submit sufficient evidence of other known participants. Therefore, I respectfully dissent in part.