# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 20, 2025

Lyle W. Cayce
Clerk

No. 23-50892

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Stephen Lee Moore,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:23-CR-103-1

_____

Before Richman, Graves, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Stephen Lee Moore appeals his sentence of twenty-seven months of imprisonment after pleading guilty under 8 U.S.C. § 1324(a)(1)(A)(ii) for transporting aliens who were unlawfully present in the United States. The district court applied U.S.S.G. § 2L1.1(b)(5)(C), which provides for a sentencing enhancement "[i]f a dangerous weapon (including a firearm) was

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

possessed."[1]  Moore argues the district court erred because the firearm at issue was inside a locked toolbox in the bed of the truck he was driving and "not practically available to Moore while he was transporting the aliens." For the reasons below, we affirm Moore's sentence.

## I

The following facts are primarily based on Moore's presentencing report (PSR).[2]  In April 2023, Moore approached a South Texas border patrol checkpoint in a pickup truck.  His passengers included Andy Huerta—who, like Moore, is an American citizen—and three women from Guatemala who had entered the United States illegally.  Federal agents detained all five passengers, searched the truck, and interviewed Moore and the Guatemalan women.

During their search of the truck, agents found a locked toolbox in the truck's bed.  Inside the toolbox was a stolen Glock 19 9mm handgun loaded with six rounds of ammunition.  The toolbox key was on the same key ring as the truck keys.

Moore stated during his post-arrest interview that he had not known about the Glock in the toolbox.  According to Moore, his father-in-law owned the truck, although Moore was purchasing it and had been driving it for approximately four months.  Agents confirmed that the truck was registered

---

[1] U.S. Sent'g Guidelines Manual [hereinafter U.S.S.G] § 2L1.1(b)(5)(C) (U.S. Sent'g Comm'n 2023).

[2] *See United States v. Owens*, 94 F.4th 481, 487 (5th Cir. 2024) ("[T]he [district] court 'may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.'" (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam))).

No. 23-50892

to Moore's father-in-law in Abilene, Texas. Moore was residing about 170 miles west of Abilene in Odessa, Texas, where the Glock had been reported stolen. At the time of the stop, Moore was under parole supervision for possessing a firearm.

Moore denied knowing that the women did not have proper documentation. According to Moore, he and Huerta had departed the previous day from Odessa for Texas's Big Bend region, where Huerta allegedly wanted to meet a woman with whom he had connected online. Moore claimed he and Huerta camped overnight, but he could not recall the campsite's name or location. Moore said they picked up the three Guatemalan women at a Family Dollar store, but Moore could not remember the town in which the store was located. According to the women, however, Moore picked them up on the side of the road after they illegally crossed the border. A video recording showed Moore and the women on the side of a road near the border with Mexico. Two of the women said that when they got in the truck, they received fraudulent Lawful Permanent Resident and Social Security cards, which were in the truck's center console. According to one of the women, Moore instructed her to retrieve the documents from the console. After picking up the women, Moore drove without stopping until they reached the border patrol checkpoint.

Moore consented to a search of his cell phone. Agents found messages from Moore's wife with two Google images showing border patrol stations and checkpoints in the Big Bend region, as well as travel directions from Marathon to Crane—two towns between the Big Bend region and Odessa. Moore's phone also had evidence of searches for sheriff's offices in two Big Bend counties and for border patrol checkpoints.

A grand jury indicted Moore for conspiracy to transport illegal aliens and for unlawfully transporting illegal aliens. Moore pled guilty to unlawfully

transporting illegal aliens, and pursuant to an agreement among the parties, the government dismissed the conspiracy charge. During Moore's sentencing hearing, the district court applied U.S.S.G. § 2L1.1(b)(5)(C) because "a dangerous weapon (including a firearm) was possessed,"[3] increasing Moore's offense level by six levels to level eighteen.

Moore objected in writing and at the sentencing hearing, arguing that there must be "some link between the firearm and the offense" to apply U.S.S.G. § 2L1.1(b)(5)(C). Moore argued that because the gun was in "a locked container in the bed of the truck," it "wasn't really accessible in any way to [him] during the event." He analogized his facts to the admittedly more "extreme" example of a defendant charged with unlawfully transporting illegal aliens who at all relevant times had a "gun in the safe in their house." The district court disagreed, finding that there was "access" and "proximity" to the gun while Moore was unlawfully transporting illegal aliens. After reducing Moore's offense level for other reasons, the district court sentenced Moore to twenty-seven months of imprisonment—the lowest end of the resulting Sentencing Guidelines range.

Moore timely appealed, arguing the district court erred in applying U.S.S.G. § 2L1.1(b)(5)(C).

## II

## A

If an objection is raised in the district court, we review the district court's interpretation or application of the Sentencing Guidelines de novo

---

[3] U.S.S.G. § 2L1.1(b)(5)(C) (U.S. Sent'g Comm'n 2023).

and its factual findings for clear error.[4]  "However, if an appellant raises an objection for the first time on appeal or raises an objection that is different from the one he raised in the district court, review is limited to plain error."[5]

The United States asserts that Moore argues for the first time on appeal that the commentary to a drug-trafficking Guidelines provision, specifically comment 11(A) to U.S.S.G. § 2D1.1, should also apply via the principles of relevant conduct to an enhancement under § 2L1.1(b)(5)(C). Moore explains that comment 11(A) "requires that an identical enhancement be applied only when there is a temporal and spatial link between a firearm, and even then the enhancement will not apply when it is clearly improbable that possession of the firearm was connected with the offense."  Moore asserts that the "principles of relevant conduct [under U.S.S.G. § 1B1.3(a)(1)] require the Court to apply the same test [as that set forth in the drug-trafficking commentary, U.S.S.G. § 2D1.1 cmt. n.11(A)] when assessing the § 2L1.1(b)(5)(C) enhancement."

In the district court, Moore did not mention or cite the commentary to the drug-trafficking enhancement in his written objections to enhancing his sentence, in his arguments at sentencing, or elsewhere.  But we need not decide whether de novo or plain error review applies to that argument because it fails under either standard.  Accordingly, we consider the district

_____

[4] *United States v. Eaden*, 914 F.3d 1004, 1007 (5th Cir. 2019) (citing *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)); *see also United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010) (citing *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009)).

[5] *United States v. Rodriguez-Leos*, 953 F.3d 320, 324 (5th Cir. 2020); *see also United States v. Ponce-Flores*, 900 F.3d 215, 217 (5th Cir. 2018); *United States v. Gutierrez-Lara*, No. 21-40845, 2022 WL 2188536, at *1 (5th Cir. June 17, 2022) (per curiam) (unpublished) (reviewing an unpreserved challenge to an enhancement pursuant to § 2L1.1(b)(5)(C) for plain error).

No. 23-50892

court's interpretation and application of U.S.S.G. § 2L1.1(b)(5)(C) de novo and its factual findings for clear error.

"In determining whether a Guidelines enhancement applies, the district court is allowed to draw reasonable inferences from the facts, and these inferences are fact findings reviewed for clear error."[6] "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[7] "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole."[8]

## B

Under U.S.S.G. § 2L1.1(b)(5)(C), "[i]f a dangerous weapon (including a firearm) was possessed," the sentencing court increases the defendant's offense level either by two levels or up to level eighteen. This enhancement is the least punitive compared to two others under U.S.S.G. § 2L1.1(b)(5), one of which provides for an enhancement if "a firearm was discharged,"[9] while the other provides for an enhancement if "a dangerous weapon (including a firearm) was brandished or otherwise used."[10]

Unlike many other specific offense characteristics, the three enhancements under U.S.S.G. § 2L1.1(b)(5) do not textually tether themselves to "the offense" specifically at issue—here, unlawfully

———————————————

[6] *Coleman*, 609 F.3d at 708 (citing *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)).

[7] *Id.* (alterations in original) (quoting *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001)).

[8] *Id.* (citing *Cooper*, 274 F.3d at 238).

[9] U.S.S.G. § 2L1.1(b)(5)(A) (U.S. Sent'g Comm'n 2023).

[10] *Id.* § 2L1.1(b)(5)(B).

transporting illegal aliens.  At least one circuit court has observed that the text does not require a nexus between the firearm and the offense beyond concurrent possession to apply the enhancement.[11]

The Sentencing Guidelines themselves provide "a rule of construction" in U.S.S.G. § 1B1.3(a) for deciding when to apply a guideline "in the absence of more explicit instructions in the context of a specific guideline."[12]    Under U.S.S.G. § 1B1.3(a), a district court considers a "defendant's relevant conduct . . . when determining whether a sentencing enhancement is appropriate."[13]  "[A] defendant's relevant conduct generally consists of all acts and omissions that he committed or caused during, in preparation for, or while covering up the offense for which he was convicted."[14]  Less pertinent here, relevant conduct also includes "acts and omissions of *others*" in cases of "jointly undertaken criminal activity."[15]  At a bare minimum, then, possession of a dangerous weapon must be "relevant conduct" to apply U.S.S.G. § 2L1.1(b)(5), whether or not any stronger nexus between the weapon and offense is required.[16]

The parties agree that Moore possessed the gun in the toolbox, at least constructively.  Moore concedes that constructive possession of a dangerous

---

[11] *See United States v. Klensch*, 87 F.4th 1159, 1166 (9th Cir. 2023) ("The plain text of § 2L1.1(b)(5)(C) does not require a nexus between possession of a weapon and commission of the crime.").

[12] U.S.S.G. § 1B1.3 cmt. background (U.S. Sᴇɴᴛ'ɢ Cᴏᴍᴍ'ɴ 2023).

[13] *United States v. Deckert*, 993 F.3d 399, 401 (5th Cir. 2021).

[14] *Id.* at 402; *see also* U.S.S.G. § 1B1.3(a) (U.S. Sᴇɴᴛ'ɢ Cᴏᴍᴍ'ɴ 2023).

[15] U.S.S.G. § 1B1.3(a)(1)(B) (U.S. Sᴇɴᴛ'ɢ Cᴏᴍᴍ'ɴ 2023) (emphasis added).

[16] *Cf. United States v. Jeffries*, 587 F.3d 690, 692-93 (5th Cir. 2009) (noting that some guidelines regarding possession of a firearm "in connection with" an offense require a showing that the firearm "facilitated, or had the potential of facilitating," the offense).

weapon can in some instances constitute relevant conduct. Indeed, "[w]e have held in numerous contexts that the concept of possession of a weapon encompasses both actual possession and constructive possession."[17]

The parties dispute, however, whether Moore's constructive possession was "relevant" to his unlawful transportation of illegal aliens. Moore argues possession is not relevant unless "a temporal and spatial relationship existed between the weapon, the alien transportation, and the defendant"—a relationship Moore asserts was not present here. By contrast, the United States argues that a "plain reading" of U.S.S.G. § 2L1.1(b)(5)(C) requires only "proof that the defendant possessed a firearm during the commission of the offense," but that even if it did require a "temporal and spatial relationship," the district court did not clearly err in applying the enhancement on these facts.

Our prior cases involving U.S.S.G. § 2L1.1(b)(5)(C), which are unpublished, have not expressly applied Moore's proffered test.[18] Instead, Moore relies on caselaw construing a similar guideline applicable to certain drug-trafficking offenses. Under U.S.S.G. § 2D1.1(b)(1), a district court also increases a defendant's offense level "[i]f a dangerous weapon (including a

---

[17] *United States v. Matias*, 465 F.3d 169, 174 & n.15 (5th Cir. 2006) (collecting cases).

[18] *See United States v. Howard*, No. 21-40873, 2022 WL 3657189 (5th Cir. Aug. 25, 2022) (per curiam) (unpublished); *United States v. Hernandez-Gomez*, 511 F. App'x 334 (5th Cir. 2013) (per curiam) (unpublished); *United States v. Gutierrez-Lara*, No. 21-40845, 2022 WL 2188536 (5th Cir. June 17, 2022) (per curiam) (unpublished); *United States v. Rodriguez*, 249 F. App'x 360 (5th Cir. 2007) (per curiam) (unpublished); *United States v. Fowler*, 136 F. App'x 620 (5th Cir. 2005) (per curiam) (unpublished); *cf. United States v. Mendoza-Rojas*, 343 F. App'x 967, 968 n.1 (5th Cir. 2009) (per curiam) (unpublished) (applying "was brandished" guideline in case where defendant conceded a firearm was possessed during offense). *But cf. United States v. Garza*, 214 F. App'x 470, 472 (5th Cir. 2007) (per curiam) (unpublished) (citing *United States v. Marmolejo*, 106 F.3d 1213, 1216 (5th Cir. 1997) (applying test to different guideline)).

No. 23-50892

firearm) was possessed."[19] We have interpreted this guideline to require the government to "establish[] by a preponderance of the evidence 'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'"[20] However, "the weapon and the crime . . . need not be connected functionally."[21] "Under this standard, 'the Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.'"[22] The government can also meet its burden by establishing "that the 'defendant possessed a firearm during conduct associated with the offense of conviction.'"[23] "Once the Government has met its burden, the defendant can only avoid the enhancement by showing that 'it was clearly improbable that the weapon was connected with the offense.'"[24]

While we have not expressly applied this drug-trafficking weapon enhancement test to the alien-transportation weapon enhancement, we have at least once, in an unpublished case, relied on the drug-trafficking guideline

---

[19] U.S.S.G. § 2D1.1(b)(1) (U.S. SENT'G COMM'N 2023).

[20] *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016) (quoting *United States v. Salado*, 339 F.3d 285, 293-94 (5th Cir. 2003)).

[21] *United States v. Suarez*, 911 F.2d 1016, 1019 (5th Cir. 1990) (citing *United States v. Hewin*, 877 F.2d 3, 5 (5th Cir. 1989)); *see also United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990) ("The inoperable character of the gun is also not dispositive.").

[22] *Romans*, 823 F.3d at 317 (quoting *Salado*, 339 F.3d at 294).

[23] *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (quoting *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006)); *see also United States v. King*, 773 F.3d 48, 54 n.1 (5th Cir. 2014) ("A temporal link could also be proven if the gun was possessed close in time to 'related relevant conduct,' meaning conduct that is within a 'common scheme or plan' of the offense of conviction." (quoting *United States v. Vital*, 68 F.3d 114, 118-20 (5th Cir. 1995))).

[24] *Romans*, 823 F.3d at 317 (quoting *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010)).

to inform the alien-transportation guideline. In *United States v. Garza*,[25] we applied caselaw interpreting "dangerous weapon" under the drug-trafficking guideline to understand that term as used in the alien-transportation guideline.[26] This was appropriate, however, because "dangerous weapon" is a term "used frequently in the guidelines," and the Guidelines provide a definition that is "of general applicability."[27] Thus, *Garza* does not support treating the guidelines similarly just because they are worded identically.

Still, Moore argues that the "principles of relevant conduct [under U.S.S.G. § 1B1.3(a)(1)] require the Court to apply the same test." Citing the Ninth Circuit's decision in *United States v. Cruz-Gramajo*,[28] Moore argues that "relevant conduct" under U.S.S.G. § 1B1.3—which, as noted, applies to all specific offense characteristics, including firearm possession under the alien-transportation guideline—must be both committed "during" an offense and also related logically to the offense. Thus, he asserts that the dangerous weapon enhancement under § 2L1.1(b)(5)(C) should apply only when the government shows by a preponderance of the evidence that a temporal and spatial relationship existed between the defendant, his transportation of aliens, and the weapon. The enhancement will apply, Moore contends, unless the defendant can show it was clearly improbable that the weapon was connected to the offense. The United States instead

---

[25] 214 F. App'x 470 (5th Cir. 2007) (per curiam) (unpublished).

[26] *Id.* at 472. At the time of *Garza*, the alien-transportation guideline was codified at U.S.S.G. § 2L1.1(b)(4)(C). *Compare* U.S.S.G. app. C, vol. I, amend. 543 (U.S. Sent'g Comm'n 2023) (adding guideline effective May 1, 1997), *with id.* app. C, vol. III, amend. 692 (amending guideline to reflect current codification effective November 1, 2006).

[27] *Garza*, 214 F. App'x at 472 (quoting U.S.S.G. § 1B1.1 cmt. n.1 (U.S. Sent'g Comm'n 2004)).

[28] 570 F.3d 1162 (9th Cir. 2009).

grounds the test in commentary applicable to the drug-trafficking guideline and argues that the two guidelines serve different purposes.

## III

Ultimately, however, we need not navigate this morass today. Like the Ninth Circuit recently did in *United States v. Klensch*,[29] we decline to decide today whether we should construe the two guidelines similarly.[30] Even assuming the temporal-and-spatial-relation test applies, we cannot say the district court clearly erred in applying the guideline when sentencing Moore.

If we were to graft this test onto the alien-transportation context, we would require the government to establish that a temporal and spatial relation existed between the weapon, the alien-transportation activity, and the defendant. We would require the government to show, by a preponderance of the evidence, either (1) that the weapon was found in the same location where evidence of alien transportation was found or where part of the transportation occurred, or (2) that the defendant possessed a firearm during conduct associated with the offense of conviction.[31]

In the drug-trafficking context, we have repeatedly held that a link between a weapon and drug-trafficking evidence is sufficient when one is found in a vehicle's passenger area and the other in the vehicle's trunk or

---

[29] 87 F.4th 1159 (9th Cir. 2023).

[30] *Id.* at 1166-67.

[31] *Cf. United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (first quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991); and then quoting *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006)) (concerning the § 2D1.1 drug-trafficking guideline).

bed. In *United States v. Guidry*,[32] we deemed a link sufficient when agents found a pistol "in the rear passenger area of [the defendant's] truck" and a package of marijuana "in the bed of the truck."[33] In *United States v. Farias*,[34] we held the district court did not clearly err in applying the guideline where a gun was "underneath the seat where [the defendant] had been sitting, near methamphetamine in the trunk."[35] And in *United States v. Jacquinot*,[36] we affirmed the enhancement where hundreds of "pounds of marijuana were found in a toolbox in the bed of the truck in which [the defendant] was riding and . . . two unloaded handguns were found in the cab of the truck."[37]

We have not limited the application of the enhancement to situations where the weapon was in the *passenger compartment*. In *United States v. Brown*,[38] "[a]uthorities found a shotgun *in the trunk* of [the defendant's] Camry in the course of their investigation, and witness testimony established that [the defendant] used the vehicle to transport crack cocaine."[39] Even though "little evidence connected [the defendant's] shotgun to drug activity," making it "a close call,"[40] this was sufficient to establish that "a temporal and spatial relationship exist[ed] between the weapon, the drug-

---

[32] 960 F.3d 676 (5th Cir. 2020).

[33] *Id.* at 679.

[34] 469 F.3d 393 (5th Cir. 2006).

[35] *Id.* at 400.

[36] 258 F.3d 423 (5th Cir. 2001).

[37] *Id.* at 431.

[38] 217 F.3d 247 (5th Cir. 2000), *vacated on other grounds sub nom. Randle v. United States*, 531 U.S. 1136 (2001); *cf. United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002) (leaving undisturbed enhancement's application).

[39] *Brown*, 217 F.3d at 261 (emphasis added).

[40] *Randle*, 304 F.3d at 378.

trafficking activity, and the defendant."[41]   Although the defendant claimed "the gun was used for self-protection," the district court properly concluded that "this claim is not inconsistent with the gun's use in drug trafficking," meaning the defendant failed "to show that a connection between the gun in the trunk of the Camry and his drug trafficking was 'clearly improbable.'"[42] While the Supreme Court vacated *Brown* in *Randle v. United States*[43] after it decided *Apprendi v. New Jersey*,[44] we ultimately left the enhancement undisturbed on remand.[45]

These cases make clear that the defendant's immediate access to a dangerous weapon is not required to establish a temporal and spatial relation between the weapon, crime, and defendant.  This is well supported by cases beyond the vehicle context, too.[46]  For example, in *United States v. Lee*,[47] we affirmed an enhancement where the defendant—a physician convicted of conspiring to distribute controlled substances out of his clinic—kept a handgun in his desk drawer at the clinic.[48]  We concluded that there was a temporal and spatial relation because "he kept the gun in his office while, in

---

[41] *Brown*, 217 F.3d at 261 (quoting *United States v. Marmolejo*, 106 F.3d 1213, 1216 (5th Cir. 1997)).

[42] *Id.*

[43] 531 U.S. 1136 (2001).

[44] 530 U.S. 466 (2000).

[45] *See Randle*, 304 F.3d at 378.

[46] *See, e.g.*, *United States v. King*, 773 F.3d 48, 54 (5th Cir. 2014) ("Here, law enforcement found a handgun with an obliterated serial number in the same room as a baggie with numerous empty clear capsules."); *United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) ("The loaded weapons at issue were found in the same home as the cash, and one was found in the same closet as a portion of the cash.").

[47] 966 F.3d 310 (5th Cir. 2020).

[48] *Id.* at 316, 328.

nearby rooms, he gave out illegal prescriptions and patients handed over cash."[49] We noted that the guideline did not require the doctor "to have the gun on his person or in the room when he prescribed to patients."[50]

*Brown* and *Lee* refute Moore's assertions that there was no temporal and spatial relation and that it was clearly improbable that the weapon was connected to the offense because the gun was in the truck's bed while he was transporting illegal aliens. Moore maintains that the gun in the truck bed "provided him no protection from [the illegal aliens] and no ability to control them." Even granting that this may have been the case while Moore was in the cab, this argument disregards our longstanding observation that even under the temporal-and-spatial-relation test, "the weapon and the crime . . . need not be connected functionally."[51] In so arguing, Moore appears to conflate his proffered temporal-and-spatial-relation test—under which the guideline should be applied if the weapon *was present* unless it is clearly improbable the weapon was connected with the offense[52]—with a requirement of some stronger nexus, such as a showing that possession of a weapon facilitated, or had the potential to facilitate, the offense.[53] But our precedent does not support this conflation.

Here, the district court had an ample basis to conclude that there was a temporal and spatial relation between the gun, the transportation of illegal aliens, and Moore. There was evidence supporting the reasonable inference

---

[49] *Id.* at 328.

[50] *Id.*

[51] *United States v. Suarez*, 911 F.2d 1016, 1019 (5th Cir. 1990) (citing *United States v. Hewin*, 877 F.2d 3, 5 (5th Cir. 1989)).

[52] *See id.*; *United States v. Hooten*, 942 F.2d 878, 881 (5th Cir. 1991).

[53] *See, e.g.*, *United States v. Jeffries*, 587 F.3d 690, 692-93 (5th Cir. 2009).

that Moore knew about the gun while transporting illegal aliens.[54] Moore had been driving his father-in-law's truck for nearly four months. The gun was in a toolbox in the truck's bed, and the key to the toolbox was on the same key ring as the truck keys. The gun was reported stolen from Odessa, the city where Moore was living, which is situated about 170 miles from where his father-in-law lived in Abilene.

There was also "evidence that [Moore] planned, in advance, to transport illegal aliens."[55] Examining Moore's cell phone, agents saw that he had searched for border patrol checkpoints and local sheriff's offices. Agents also found images from his wife showing checkpoint locations. Additionally, one of the Guatemalan women stated that Moore instructed her to retrieve fraudulent documents from the truck's center console.

Moore transported illegal aliens while the gun was in the truck's bed. As the driver, Moore controlled the group's movement from when he picked up the Guatemalan women until they reached the checkpoint. During this time, Moore "was in relative proximity to his [truck's bed] and could have retrieved the gun from the [bed] without any significant delay."[56]

---

[54] *See United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010) ("In determining whether a Guidelines enhancement applies, the district court is allowed to draw reasonable inferences from the facts.").

[55] *United States v. Garza*, 214 F. App'x 470, 472 (5th Cir. 2007) (per curiam) (unpublished).

[56] *United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990) ("Paulk was arrested some distance from his car as he was watching the sale of amphetamines take place at the car. The pistol could not be fired, was unloaded and was inside the fastened glove compartment of the car. . . . The fact that Paulk was arrested some distance from his car is not dispositive.").

Reviewing the record as a whole, we are not "left with the definite and firm conviction that a mistake has been committed."[57]  It would have been more than "plausible" for the district court to find a temporal and spatial relation between the gun, the crime, and Moore.  Indeed, the district court expressly found "that there's access and that there is proximity to the firearm," meaning the court did not clearly err by failing to make any "factual finding as to any nexus between" the gun and Moore's offense.[58]

Even if Moore were entitled to "avoid the enhancement by showing that 'it was clearly improbable that the weapon was connected with the offense,'"[59] an issue we do not reach today, his only arguments to this end emphasize that the gun was in a locked toolbox in the truck's bed while he was in the driver's seat.  We have already concluded this showed a temporal and spatial relation, meaning Moore has not met his burden.

\*　　　\*　　　\*

For the foregoing reasons, we AFFIRM Moore's sentence.

_____

[57] *Coleman*, 609 F.3d at 708.

[58] *United States v. Miller*, 890 F.3d 317, 328 (D.C. Cir. 2018).

[59] *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016) (quoting *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010)).